[THE STATE, EX REL.] RILEY, v.
INDUSTRIAL COMMISSION OF OHIO ET AL.

(No. 82AP-631—Decided March 3, 1983.)

*Messrs. Roeller & Roeller* and *Mr. Robert K. Roeller,* for relator.

*Mr. Anthony J. Celebrezze, Jr.,* attorney general, and *Mr. Bradley J. Finn,* for respondents.

MCCORMAC, J. Relator, Clifford Riley, sustained an injury in the course of his employment with William Mehr, Inc., on April 5, 1980, and his claim was allowed. He was awarded temporary total disability for the period of July 5, 1980 through May 1, 1981. From wage information supplied by his employer, his full weekly wage was set at $185.15, and he was paid seventy-two percent of that amount for the first twelve weeks of his disability. After having drawn twelve weeks of total disability at seventy-two percent of his full weekly wage, his future total disability awards were to be calculated, pursuant to R.C. 4123.56 and 4123.61, at sixty-six and two-thirds percent of his average weekly wage for the period of one year preceding his injury. However, relator had only worked from March 16, 1980 to April 5, 1980, and had been unemployed for the remainder of the preceding year because, according to his statement, he was then receiving other income making it unnecessary for him to work.

The Bureau of Workers' Compensation set his average weekly wage for the preceding year at $10.92 a week, based

upon dividing fifty-two weeks into the income that he had received from March 16, 1980 to April 5, 1980. Future awards were based upon this weekly wage.

Relator filed a motion with the Bureau of Workers' Compensation requesting that his average weekly wage be set at the same rate as his full weekly wage. The motion was denied by the hearing officer because relator voluntarily chose not to work during most of the preceding year.

In his mandamus action, relator claims that the Industrial Commission abused its discretion in failing to establish his average weekly wage in accordance with law. The sole evidence before the court is relator's claim file.

R.C. 4123.61 provides, as pertinent, as follows:

"The average weekly wage of an injured employee at the time of the injury * * * shall be taken as the basis upon which to compute benefits.

"In cases of temporary total disability the compensation for the first twelve weeks for which compensation is payable shall be based on the full weekly wage of the claimant at the time of the injury * * *.

"Compensation for all further temporary total disability shall be based as provided for permanent disability claims.

"In death claims, permanent total disability claims, permanent partial disability claims, and claims for impairment of earnings, the claimant's or decedent's average weekly wage for the year preceding the injury * * * shall be the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, * * * any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.

"In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the commission, in determining the average weekly wage in such cases, shall use such method as will enable it to do substantial justice to the claimants."

Relator had no period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond his control. Hence, that provision of R.C. 4123.61 is not applicable.

Thus, the issue is whether relator has shown special circumstances upon which his average weekly wage cannot justly be determined by applying the usual calculation which resulted in the $10.92 rate found by the commission. If so, the Industrial Commission is required to use another method to enable it to do substantial justice to the relator.

The unusual circumstances shown by relator were that, because of other income, he had no need to work and did not work for forty-nine of the fifty-two previous weeks. There is no indication that relator did not intend to work regularly in the future; in fact, the evidence is all to the contrary.

R.C. 4123.61 provides that "the claimant's * * * average weekly wage for the year preceding the injury * * * shall be the weekly wage upon which compensation shall be based." That provision necessarily presupposes the usual circumstance where the claimant will have been employed at the beginning of the year and continues to be so (but for justified interruptions) for the entire year. This case presents a different circumstance — one in which relator first became employed only a few weeks before his injury. R.C. 4123.61 contemplates such an exceptional circumstance because it provides further that "[i]n cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the commission, in determining the average weekly wage in such cases, shall use such method as will enable it to do substantial justice to the claimants."

The fact that relator first became employed only three weeks before the injury clearly constitutes a special circumstance since the average weekly wage is established to find a fair basis for award for the loss of future compensation.

Upon a finding of a special circumstance, there is a second condition to applying a different standard for calculation of the wage base, namely that the average weekly wage cannot justly be determined by application of the usual standard. The commission did not purport to make this determination, but, instead, found no special circumstance because relator did not need to work because of other income prior to his obtaining the employment in the course of which he was injured. Even if the commission had made this determination, a finding of a $10.92 weekly wage would have constituted an abuse of discretion.

The evidence that was before the commission indicated that relator commenced work on March 16, 1980, and was injured on April 5, 1980. Although a medical report refers to loss of work, the employer's certification states, "did not lose any time." Relator indicates that he was on this job a total of five months and lost no time and that he was paid wages during disability. Eventually, relator was awarded temporary total compensation effective July 5, 1980, continuing through May 1, 1981.

While the evidence indicates relator had no income in 1979 and the first two and one-half months of 1980, his W-2 wage statement indicates his 1980 income as being $2,655.93. If this were utilized, the average weekly wage would be $51.08, rather than the $10.92 the commission found based only on earnings from March 16 to April 5, 1980. In any event, the total circumstances indicate that the commission abused its discretion and acted contrary to R.C. 4123.61 in determining relator's average weekly wage by utilizing the salary for three weeks as that for the entire year. There

were special circumstances involved since relator first became employed three weeks before his injury, and an unjust result was reached by considering only those three weeks. The three weeks were obviously an unjust barometer of relator's prospective future average wages that would be lost if he could not work.

In further support of this finding, the evidence was that relator continued employment after his injury since he received his salary until July. There was also an indication that relator intended to remain employed absent the injury, since he was found by respondent to have sustained a temporary total disability under R.C. 4123.54 and 4123.56, which requires a finding of a loss (of wages) as a prerequisite to compensation.

Accordingly, the commission, pursuant to the last paragraph of R.C. 4123.61, should have utilized a method to determine relator's average weekly wage "as will enable it to do substantial justice to the claimant(s)."

A writ of mandamus is granted. The commission is ordered to determine an average weekly wage as will enable it to do substantial justice to relator.

*Writ granted.*

WHITESIDE, P.J., and STRAUSBAUGH, J., concur.