OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Barrett, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

The State ex rel. Clark, Appellant, v. Industrial Commission of Ohio et al., Appellees.

[Cite as State ex rel. Clark v. Indus. Comm. (1994),        Ohio St.3d      .]

Workers' compensation -- Claimant demonstrates "special circumstances" so as to warrant a departure from the standard average weekly wage formula, when.

(No. 93-1008 -- Submitted April 19, 1994 -- Decided July 13, 1994.)

Appeal from the Court of Appeals for Franklin County, No. 92AP-1112.

Through much of the mid-1980s appellant-claimant, Gladys Clark, was unemployed. She began working for appellee Bill Knapp's Ohio, Inc. in the first week of July 1988. On July 29, 1988, she was injured in the course of and arising from her employment.

After her workers' compensation claim was allowed, a Bureau of Workers' Compensation claims examiner set claimant's average weekly wage ("AWW") at $13.49, dividing claimant's wages during the year prior to injury ($53.94) by the four weeks worked. Claimant moved appellee Industrial Commission to reset her average weekly wage pursuant to R.C. 4123.61. She submitted a supporting affidavit that stated:

"1. I worked as a waitress at a Bob Evans Restaurant from 1983 to 1986. My attorney has attempted to obtain wage information to document my earning power during that period but Bob Evans has been unable to produce those wage records.

"2. In 1986, extraordinary circumstances in my personal life forced me to leave the work force. Because my daughter suffers from severe psychiatric conditions, I was forced to leave the work force in order to get custody of my granddaughter, who was an abused child. I was unable to work for several years due to the various legal proceedings and the need to care for my grandchild.

"3. On or about July 1, 1988, I attempted to return to work on a very limited basis (i.e., a couple of hours per week) at Bill Knapps [sic] in order to see how my granddaughter would adjust to my absence from the home. The attached C-94-A has

been provided by Bill Knapps [sic] and shows my limited earnings during that period. The injury in this claim occurred while I was working only several hours per week.

"4. While I working on a more regular basis for Bob Evans between 1983 and 1986, my typical weekly earnings, including salary and tips, was [sic] approximately $130.00."

A district hearing officer granted claimant's motion to the following extent:

"Average weekly wage * * * is set at $20.00. This amount is calculated pursuant to R.C. 4123.61, using the standard of substantial justice.

"Per claimant's testimony at hearing, claimant voluntarily removed herself from [the] work force to care for her 14 year old grandchild and returned to [the] work force only four (4) weeks prior to her injury. Claimant was scheduled to work only two (2) hours a week at Bill Knapp's and worked only two (2) hours a week for the four (4) weeks prior to her injury. There are no wages for the remaining 48 weeks of the year prior to her injury since her removal from the work force. Claimant indicated that she earned $2.01 per hour plus tips which she indicated was a few dollars. Average weekly wage and full weekly wage is [sic] set at $20.00 based upon an hourly rate set at $10.00 multiplied by two (2) hours a week (the number of hours a week claimant worked)."

A regional board of review affirmed.

Claimant again appealed. She submitted to staff hearing officers another affidavit, which indicated that she was currently employed full-time at Lazarus. Claimant's averred hourly rate was $5.55 with gross weekly earnings of $208. Numerous pay stubs substantiated the affidavit. Despite the additional evidence, however, the earlier order was affirmed without comment.

Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, claiming that the average weekly wage as set was not subtantially just and constituted an abuse of discretion. The appellate court denied the writ.

This cause is now before this court upon an appeal as of right.

Stewart Jaffy & Associates Co., L.P.A., Stewart R. Jaffy and Marc J. Jaffy, for appellant.

Lee Fisher, Attorney General, and Richard A. Hernandez, Assistant Attorney General, for appellee Industrial Commission.

Per Curiam. As "the basis upon which to compute benefits," R.C. 4123.61, average weekly wage "is designed to 'find a fair basis for award for the loss of future compensation.'" State ex rel. Wireman v. Indus. Comm. (1990), 49 Ohio St.3d 286, 287, 551 N.E.2d 1265, 1266-1267, quoting Riley v. Indus. Comm. (1983), 9 Ohio App.3d 71, 73, 9 OBR 90, 92, 458 N.E.2d 428, 430.

The standard formula for establishing AWW is to divide claimant's earnings for the year preceding injury by fifty-two weeks. Two exceptions exist.

The first directs the commission to eliminate from the weekly denominator any period of unemployment beyond claimant's control. R.C. 4123.61. The bureau used this provision to

reduce claimant's weekly denominator from fifty-two to four, but claimant contested the $13.49 weekly figure that resulted.

A broader second exception provides:

"In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the commission, in determining the average weekly wage in such cases, shall use such method as will enable it to do substantial justice to the claimants." R.C. 4123.61.

Two questions are accordingly raised: (1) Did claimant demonstrate "special circumstances" so as to warrant a departure from the standard AWW formula? and (2) If so, is the current AWW substantially just?  For the reasons to follow, we answer only the first question in the affirmative.

In invoking the "substantial justice" provision to raise claimant's AWW, the district hearing officer necessarily found that a "special circumstance" existed.  The hearing officer did not, however, identify the "special circumstance."  In Riley, supra, the proximity of the claimant's date of injury to his reentry into the work force constituted a "special circumstance."  We find the same to exist in this case.

In Riley, the claimant entered the labor force on March 16, 1980.  Prior to that time, the receipt of other income had made it unnecessary for him to work.  On April 5, 1980, Riley was injured.  The bureau set his AWW at $10.92, dividing income received from March 16, 1980 through April 5, 1980 by fifty-two.

In reviewing the figure, the appellate court first found that R.C. 4123.61's exclusion for involuntary unemployment did not apply, since claimant had voluntarily stayed out of the work force.  Resolution thus hinged on whether claimant had "shown special circumstances upon which his average weekly wage cannot justly be determined by applying the usual calculation which resulted in the $10.92 rate found by the commission.  If so, the Industrial Commission is required to use another method to enable it to do substantial justice to the relator."  Id. at 72, 9 OBR at 92, 458 N.E.2d at 430.

The court concluded:

"[T]he total circumstances indicate that the commission abused its discretion and acted contrary to R.C. 4123.61 in determining relator's average weekly wage by utilizing the salary for three weeks as that for the entire year.  There were special circumstances involved since relator first became employed three weeks before his injury, and an unjust result was reached by considering only those three weeks.  The three weeks were obviously an unjust barometer of relator's prospective future average wages that would be lost if he could not work."  Id. at 73, 9 OBR at 93, 458 N.E.2d at 431.

We find Riley instructive on the question of subtantial justice as well.  In this instance, claimant submitted evidence that demonstrated that she was, by then, regularly working 37.5 hours per week.  That evidence, coupled with claimant's averment of earnings at Bob Evans, negates the commission's assertion that $20.00 is a just barometer of the amount of wages, and commensurately, the amount of work that claimant was accustomed to, satisfied with and planned to continue.

Considerable debate surrounds the voluntariness of claimant's reduced hours.  In this case, we agree that

claimant's reduced hours, while commendably motivated, were nonetheless voluntary.  It does not, however, automatically follow that because reduced hours are voluntarily undertaken, any AWW, no matter how low, is substantially just.  If this were true, the only provision for adjustment would be R.C. 4123.61's "involuntary unemployment" exemption.  No substantial justice exception would exist.

    For these reasons, we find that the commission abused its discretion in setting an AWW that did not do substantial justice to the claimant.  Accordingly, the judgment of the court of appeals is reversed and the cause is returned to the commission for further consideration of claimant's AWW motion.

                                    Judgment reversed
                                    and cause remanded.

    Moyer, C.J., A.W. Sweeney, Douglas, Resnick, F.E. Sweeney and Pfeifer, JJ., concur.

    Wright, J., not participating.