{¶ 1} Relator, Wendell Kidwell, has filed an original action requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate an order in which it denied relator's motion seeking an increase in his average weekly wage ("AWW") under R.C. 4123.61. Relator seeks a writ ordering the commission to set his AWW at $436.61 or, in the alternative, to use a formula that will do substantial justice.
 {¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 56(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court issue a "limited writ," returning this matter to the commission to vacate its decision, to set a hearing on the issue of "special circumstances" under R.C. 4123.61, and to issue a new order granting or denying relator's motion for an increase in his AWW. (Attached as Appendix A.)
 {¶ 3} Respondent, Webster Industries, Inc. ("Webster Industries"), has filed objections to the magistrate's decision, asserting that the magistrate erred in concluding that the commission had not determined or considered relator's special circumstances eligibility. The commission also filed an objection, asserting that the magistrate erred in determining that the commission abused its discretion in setting relator's AWW.
 {¶ 4} The following findings of fact are taken from the magistrate's decision and stipulated evidence. On April 5, 1999, Webster Industries hired relator at an hourly rate of $9.93. On April 23, 1999, relator suffered a work-related injury, and a claim was allowed for a sprained right ankle and reflex sympathetic dystrophy of the right ankle.
 {¶ 5} In the four weeks prior to the injury, relator had earned $1,431.65 in wages. Webster Industries, a self-insured employer, calculated the full weekly wage at $238.61. The employer found that the AWW was zero, and established a benefit rate of $189, the statutory minimum in 1999. Relator returned to work, but exacerbated the ankle condition on September 10, 1999, and missed work intermittently. Relator's last day of work was October 10, 2000.
 {¶ 6} In December 2001, relator filed a motion seeking to have his AWW reset at $436.86. Attached to the motion was a wage statement, in which relator averred the following:
 {¶ 7} "I was hired at Webster on or about April 5, 1999. I was injured on April 23, 1999[,] thus merely worked four weeks prior to being injured. Prior to being hired at Webster, I was self[-]employed and did not complete a tax return and have no record of the earnings for my self[-]employment. I started at Webster making $9.33 per hour and in August 1999 my rate was increased to $10.08 per hour. After being injured on April 23, 1999 I merely missed five days of work in April 1999, three days of work in May 1999 and again from June 18, 1999 to July 15, 1999. I sustained acute exacerbation on September 10, 1999. Prior to that, I was known to see a gradual resolution of my original injury. On September 10, 1999 I was walking out of the plant. I stepped off a step and twisted my right foot/ankle, causing an immediate onset of severe throbbing and intense pain. I went back to my doctor * * * who felt that the incident of September 10, 1999 was an exacerbation of the April 23, 1999 injury. Under these circumstances, I am requesting that my average weekly wage be set on the earnings that I made at Webster from the initial date of my injury to my last work date * * *. Thus, I ask that these total earnings of $9,611.00 be divided by 22 weeks, which equates to an AWW of $436.86. * * *"
 {¶ 8} In January 2002, a hearing was conducted before a district hearing officer ("DHO"), who issued an order stating in part:
 {¶ 9} "The Average Weekly Wage is set at $27.53.
 {¶ 10} "The District Hearing Officer finds the claimant has documented earnings for the 52 weeks prior to the injury of $1,431.65. The claimant testified that along with his documented earnings with the instant employer he also worked for some intermediate amount of time for a temporary agency and for an employer in New Reigel. He has not, however, provided any proof of what he earned with the latter two employers.
 {¶ 11} "The claimant further testified he did not work otherwise during the year prior to his injury because he was re-modeling his home. The District Hearing Officer finds there is no provision in Ohio law to exclude the weeks the claimant voluntarily remained out of the work force from the calculation of his Average Weekly Wage.
 {¶ 12} "Moreover, the District Hearing Officer finds that accepting the claimant's recommendation to set the Average Weekly Wage based on his hourly rate with the instant employer times 40 hours a week would award the claimant a windfall. The District Hearing Officer finds that setting the Average Weekly Wage at the suggested $397.20 would not accurately reflect the claimant's actual average weekly wage, as the statute calls for."
 {¶ 13} Relator appealed the decision of the DHO to a staff hearing officer ("SHO"). The SHO conducted a hearing and issued a decision affirming the order of the DHO, stating in part:
 {¶ 14} "The average weekly wage is set at $27.33.
 {¶ 15} "The average weekly wage is set based on gross earnings of $1,431.65 divided by 52 weeks.
 {¶ 16} "The Staff Hearing Officer declines to exclude weeks during the year prior to the 4/23/1999 industrial injury for reason that the claimant voluntarily removed himself from the workforce in order to remodel his house.
 {¶ 17} "The Staff Hearing Officer also declines to exclude the weeks during the year prior to the 4/23/1999 industrial injury that the claimant allegedly worked for a temporary agency and one or two other employers in New Reigel Ohio and Trinity Divco in Findlay, Ohio. The claimant was unable to produce proof of earnings (W-2's) from these other employers that he allegedly worked for over this time period."
 {¶ 18} As noted above, the magistrate recommended that this matter be returned to the commission for consideration of whether there existed "special circumstances" under R.C. 4123.61. R.C. 4123.61 states in part:
 {¶ 19} "The average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits. * * *
 {¶ 20} "In death, permanent total disability, permanent partial disability claims, and impairment of earnings claims, the claimant's * * * average weekly wage for the year preceding the injury or the date the disability due to the occupational disease begins is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury * * * any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
 {¶ 21} "In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants."
 {¶ 22} Generally, "[t]he `standard formula for establishing [average weekly wage] is to divide claimant's earnings for the year preceding injury by fifty-two weeks.'" State ex rel. McDulin v. Indus. Comm. (2000), 89 Ohio St.3d 390, 391, quoting State ex rel. Clark v. Indus. Comm. (1994), 69 Ohio St.3d 563, 565. Thus, "[t]he statute provides a standard AWW computation that is to be used in all but the most exceptional cases." State ex rel. Cawthorn v. Indus. Comm. (1997),78 Ohio St.3d 112, 114. However, R.C. 4123.61 speaks to "special circumstances" which may permit recalculation of a benefit amount. This court has noted, "the calculation involving `special circumstances' is only applicable to unusual or exceptional cases," and that "two general considerations dominate: (1) that the AWW must do substantial justice; and (2) the calculation should not result in a windfall." State ex rel. Major v. Indus. Comm., Franklin App. No. 01AP-833, 2002-Ohio-2224, at ¶ 16.
 {¶ 23} In the instant case, the magistrate recognized that, "where a claimant alleges that he worked but fails to produce any records relating to the alleged employment, the commission may consider whether any unfair advantage would accrue by applying the special circumstances provision." The magistrate nevertheless determined that the commission had failed to address whether or not relator established special circumstances under the statute.
 {¶ 24} We note, however, that the DHO, in the January 2002 order, specifically found that accepting relator's recommendation to increase his AWW would amount to awarding the claimant a "windfall." In that report, the DHO noted relator's testimony that he had worked some "indeterminate amount of time" for a temporary agency and for an employer in New Riegel, but that relator had failed to provide "any proof of what he earned" with those employers. The DHO also noted evidence that relator "did not work otherwise during the year prior to his injury because he was re-modeling his home." The SHO similarly found that relator "was unable to produce proof of earnings (W-2's) from these other employers that he allegedly worked for over this time period."
 {¶ 25} Contrary to the magistrate's determination, we construe the orders of the DHO and SHO as giving consideration to the issue of "special circumstances." To the extent that relator, during the year prior to his accident, took time off to remodel his home, such voluntary unemployment does not represent special circumstances under R.C. 4123.61. As to relator's conflicting representations that he was self-employed and that he worked for two or three employers during the relevant time period, relator failed to produce any evidence necessary to establish an AWW at the amount he contends is appropriate or that would support a deviation from the standard calculation due to special circumstances. As noted under the facts, in his wage statement submitted with his motion to increase his AWW, relator asserted that, in the year prior to injury, he was self-employed but "did not complete a tax return," and that he had "no record of the earnings for my self-employment." Further, despite relator's subsequent contention that he worked for two or three employers during the year prior to his injury, he did not provide any record of earnings, including W-2's or other documentary evidence regarding that employment. Under such circumstances, the commission is not required to accept self-serving statements in considering whether an increase in AWW is warranted. State ex rel. Major, supra, at ¶ 17. See, also, State ex rel. McDulin, supra, at 392 (commission did not abuse discretion in failing to include claimant's Form 1040 "miscellaneous income" in computation of his AWW; commission was "particularly interested in viewing claimant's 1040 form and its categorization of the disputed amount, but claimant did not submit that information").
 {¶ 26} Based upon the record in this case, including the absence of any evidence documenting wage amounts earned by relator apart from his employment with respondent-employer during the year preceding the injury, we are unable to conclude that the commission abused its discretion in utilizing the standard AWW calculation. We therefore sustain respondents' objections to the magistrate's decision. We adopt the findings of fact set forth in the magistrate's decision, as amplified herein, but we do not adopt the conclusions of law, and relator's requested writ is hereby denied.
Objections sustained; writ denied.
LAZARUS and BRYANT, JJ. concur.
 IN MANDAMUS {¶ 27} Relator, Wendell Kidwell, has filed the present action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate the order in which it not only denied an increase in his average weekly wage ("AWW") under R.C. 4123.61 but set a lower AWW. Relator seeks a writ directing the commission to set his AWW at $436.86 or, in the alternative, to use a formula that will do substantial justice.
Findings of Fact:
 {¶ 28} 1. On April 5, 1999, Wendell Kidwell ("claimant") was hired by Webster Industries. His hourly rate was $9.93 per hour.
 {¶ 29} 2. On April 23, 1999, claimant sustained a work-related injury, and his workers' compensation claim was allowed for a sprained right ankle and reflex sympathetic dystrophy of the right ankle.
 {¶ 30} 3. In the four weeks of work prior to the injury, claimant had earned $1,431.65 in wages at Webster Industries. The self-insured employer calculated the full weekly wage at $238.61. The employer found that the AWW was zero, and established a benefit rate of $189, the statutory minimum in 1999.
 {¶ 31} 4. Claimant returned to work. Over time, his hourly rate increased.
 {¶ 32} 5. On September 10, 1999, claimant exacerbated the ankle condition, and missed work intermittently. His last day of work was October 10, 2000.
 {¶ 33} 6. In December 2001, claimant filed a motion asking that his AWW be reset to $436.86. In support of the motion, claimant filed evidence of his weekly earnings at Webster Industries from the hire date in April 1999 through October 11, 1999, which totaled $9,611 for 22 weeks of employment. Claimant also filed his attendance records for that period and a wage-statement form on which he indicated that $9,611 from Webster Industries constituted his entire earnings from April 23, 1998 to October 11, 1999.
 {¶ 34} 7. In January 2002, a hearing was held before a district hearing officer ("DHO"), whose order indicates that claimant testified that, during the year prior to his injury, he was engaged in remodeling his home and worked for a temporary agency as well as an employer in New Reigel. However, claimant had no documentation of the employment. For the following reasons, the DHO set the AWW at $27.53:
 {¶ 35} "The District Hearing Officer finds the claimant has documented earnings for the 52 weeks prior to the injury of $1,431.65. The claimant testified that along with his documented earnings with the instant employer he also worked for some indeterminate amount of time for a temporary agency and for an employer in New Reigel. He has not, however, provided any proof of what he earned with the latter two employers.
 {¶ 36} "The claimant further testified he did not work otherwise during the year prior to his injury because he was re-modeling his home. The District Hearing Officer finds there is no provision in Ohio law to exclude the weeks the claimant voluntarily remained out of the work force from the calculation of his Average Weekly Wage.
 {¶ 37} "Moreover, the District Hearing Officer finds that accepting the claimant's recommendation to set the Average Weekly Wage based on his hourly rate with the instant employer times 40 hours a week would award the claimant a windfall. The District Hearing Officer finds that setting the Average Weekly Wage at the suggested $397.20 would not accurately reflect the claimant's actual average weekly wage, as the statute calls for."
 {¶ 38} 8. In March 2001, a staff hearing officer affirmed:
 {¶ 39} "The average weekly wage is set at $27.33.
 {¶ 40} "The average weekly wage is set based on gross earnings of $1,431.65 divided by 52 weeks.
 {¶ 41} "The Staff Hearing Officer declines to exclude weeks during the year prior to the 4/23/1999 industrial injury for reason that the claimant voluntarily removed himself from the workforce in order to remodel his house.
 {¶ 42} "The Staff Hearing Officer also declines to exclude the weeks during the year prior to the 4/23/1999 industrial injury that the claimant allegedly worked for a temporary agency and one or two other employers in New Reigel, Ohio and Trinity Divco in Findlay, Ohio. The claimant was unable to produce proof of earnings (W-2's) from these other employers that he allegedly worked for over this time period."
 {¶ 43} 9. The commission refused further appeal.
Conclusions of Law:
 {¶ 44} The issues before this court are whether the commission abused its discretion in lowering claimant's AWW from $189 to $27.53 and whether it had a duty to grant the requested AWW of $436.86. The magistrate concludes that the order constituted an abuse of discretion because the commission did not provide an adequate explanation of its rationale as required by State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, in that the commission's order suggests that it failed to address a crucial issue.
 {¶ 45} Calculation of the AWW is governed by R.C. 4123.61, which states:
 {¶ 46} "* * * [T]he claimant's * * * average weekly wage for the year preceding the injury * * * is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, * * * any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
 {¶ 47} "In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable him to do substantial justice to the claimants."
 {¶ 48} Under the standard formula, as set forth above, the commission totals the wages for the 52 weeks before the injury and divides that total by 52, unless there was unemployment beyond the control of the worker or unless there were special circumstances. State ex rel. Wireman v. Indus. Comm. (1990), 49 Ohio St.3d 286; State ex rel. Cawthorn v. Indus. Comm. (1997), 78 Ohio St.3d 112.
 {¶ 49} Here, under the first paragraph of R.C. 4123.61, the commission was within its discretion to determine that claimant failed to provide adequate proof of other wages during the year prior to injury and that claimant's lack of other gainful employment had been voluntary. However, the commission did not address whether or not claimant established special circumstances under the second paragraph.
 {¶ 50} A line of cases has developed in which the courts addressed the situation where a worker is injured shortly after beginning a new job. Depending on the circumstances, the worker may qualify for the "special circumstances" exception even where the period of unemployment prior to the new job was voluntary. In Riley v. Indus. Comm. (1983),9 Ohio App.3d 71, an employee began a full-time job following a period during which he chose not to work due to other income. After returning to the workforce, he was injured after three weeks on the job. The court noted, however, that there "was no indication that relator did not intend to work regularly in the future; in fact, the evidence is all to the contrary." Id. at 72. This court concluded that the "total circumstances" indicated that the commission abused its discretion by dividing the three weeks of earnings by 52 weeks. The court found that claimant's AWW based on 48 weeks of voluntary unemployment was "obviously an unjust barometer of relator's prospective future average wages that would be lost if he could not work." Id. at 73.
 {¶ 51} In State ex rel. Sutherland v. Indus. Comm. (Sept. 25, 1986), Franklin App. No. 85AP-866, the claimant obtained employment upon his release from prison but was injured after four days on the job. In regard to the first paragraph of R.C. 4123.61, this court held that claimant's period of incarceration was not beyond his control so as to be excluded from the standard calculation. However, in regard to the second paragraph of R.C. 4123.61, the court determined that the period of incarceration was a special circumstance that justified the use of an alternative method of computing claimant's AWW. In writing the court's opinion, Judge Moyer relied on Smith v. Indus. Comm. (1986),25 Ohio St.3d 25, for the proposition that, while a period of unemployment might not be excludable from the standard calculation, it can establish the special circumstances under which a claimant's AWW cannot be justly determined by use of the standard formula.
 {¶ 52} In State ex rel. Clark v. Indus. Comm. (1994),69 Ohio St.3d 563, a woman who had been steadily employed at a restaurant for many years took a voluntary leave of absence to care for her grandchild. She later returned to work on a part-time basis while the child adjusted to the transition, and she was injured while working part-time. At the hearing, claimant presented evidence that she was currently working at a full-time job at which she was steadily employed. The court concluded that it was an abuse of discretion to calculate claimant's AWW by combining four weeks of part-time wages with 48 weeks of unemployment and dividing the total by 52 weeks. The court relied on evidence of claimant's years of steady work prior to the injury, concluding that $20 per week did not reflect "the amount of work that claimant was accustomed to, satisfied with and planned to continue." Id.
 {¶ 53} In regard to determining the AWW, the Ohio Supreme Court has repeatedly stated the general principle that R.C. 4123.61 is designed to "find a fair basis for award for the loss of future compensation." See State ex rel. Thompson v. Ohio Edison Co. (1999), 85 Ohio St.3d 290,292; State ex rel. Price v. Cent. Serv., Inc., 97 Ohio St.3d 245,2002-Ohio-6397. The overriding principle is to do substantial justice to the claimant while not providing a windfall. Wireman, supra.
 {¶ 54} In the present action, the commission found that claimant's unemployment in the year prior to injury was voluntary. That finding was within the commission's discretion, but that finding did not end the inquiry, as the above-cited decisions demonstrate. The question remained whether claimant had established special circumstances under the second paragraph.
 {¶ 55} The magistrate recommends that this matter be returned to the commission for consideration of whether there were "special circumstances" under R.C. 4123.61. As set forth above, the factors for consideration include whether there was evidence that claimant intended to continue working steadily at full-time employment and whether the AWW was a fair barometer of the amount of wages and work that claimant was accustomed to and planned to continue. Further, in regard to the "special circumstances" provision, the court stated in Cawthorn: "[S]pecial circumstances can be invoked only if the standard calculation yields a result that is substantially unjust. * * * Clark's AWW was only $20, a figure which almost inherently and immediately raised substantial-justice concerns." 78 Ohio St.3d at 115.
 {¶ 56} Nonetheless, the magistrate notes that the facts of this case involve a claimant who purported to have been employed prior to being hired at Webster Industries but who provided no tax returns, W-2 forms or pay stubs whatsoever for that employment. Because the statutory formula is based on the wages for the year prior to injury, a fair AWW ordinarily depends on the claimant's producing his wage records for the year prior to injury. Accordingly, where a claimant alleges that he worked but fails to produce any records relating to the alleged employment, the commission may consider whether any unfair advantage would accrue by applying the special circumstances provision. Given the statutory formula, the commission may be reasonably concerned about giving an undue reward to those claimants who fail to produce any documentation for alleged employment and want only their recent wages to be considered.
 {¶ 57} Based on the foregoing, the magistrate concludes that the court should grant a limited writ of mandamus, returning this matter to the commission to vacate the decision of the staff hearing officer, to set a hearing on the issue of special circumstances under R.C. 4123.61, and to issue a new order granting or denying claimant's motion for an increase in his AWW from $189.