[Cite as *State ex rel. Tantarelli v. Decapua Ents., Inc.*, 2017-Ohio-5603.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Anthony R. Tantarelli, | : | |
| Relator, | : | |
| v. | : | No. 16AP-700 |
| Decapua Enterprises, Inc., and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on June 29, 2017

**On brief:** *Law Office of Stanley R. Jurus*, and *Michael J. Muldoon*, for relator.

**On brief:** *Michael Soto*, for respondent Decapua Enterprises, Inc.

**On brief:** *Michael DeWine*, Attorney General, and, *Natalie J. Tackett*, for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

DORRIAN, J.

{¶ 1} Relator, Anthony R. Tantarelli, commenced this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his motions to increase his average weekly wage ("AWW"), and ordering the commission to grant his request for an increase.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate concluded that

relator did not provide any reason for his unemployment in the year preceding his employment with respondent Decapua Enterprises, Inc., and subsequent injury. Thus, this case can be distinguished from the facts in *Riley v. Indus. Comm.*, 9 Ohio App.3d 71 (10th Dist.1983) and *State ex rel Clark v. Indus. Comm.*, 69 Ohio St.3d 563 (1994), as the relators in those cases both provided reasons for the absences from the workforce, whereas relator herein did not provide a reason. The magistrate further found that relator failed to substantiate his assertion that he had been actively seeking employment. Finally, the magistrate found that relator had numerous opportunities to present evidence to support his motions for recalculation but failed to do so. Accordingly, the magistrate determined that the requested writ of mandamus should be denied.

{¶ 3} Relator has filed the following objection to the magistrate's decision:

> The Relator would strongly object to the Magistrate's recommendation in this case. In this case, an abuse of discretion has occurred and it is incumbent upon this Honorable Court to address the abuse of discretion.

{¶ 4} Relator asserts that it is patently unfair to only consider three weeks of a claimant's earnings to address his AWW. Relator argues first that the magistrate erred in distinguishing the present case from *Clark* and that *Clark* is on point. Second, relator argues the magistrate erred in not following R.C. 4123.61 and 4123.95 by not eliminating relator's 49 weeks of unemployment in the year preceding the injury.

{¶ 5} The standard calculation to be used to determine AWW is to divide the total wages earned in the year prior to the date of injury by 52. *Id.* at 565. However, there are two exceptions to the standard calculation: (1) unemployment beyond the control of the claimant; and (2) the "special circumstances" provision in R.C. 4123.61. R.C. 4123.61 provides:

> In ascertaining the average weekly wage for the year previous to the injury, or the date the disability due to the occupational disease begins any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
>
> In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers'

> compensation, in determining the average weekly wage in such cases, shall use such method as will enable the administrator to do substantial justice to the claimants, provided that the administrator shall not recalculate the claimant's average weekly wage for awards for permanent total disability solely for the reason that the claimant continued working and the claimant's wages increased following the injury.

{¶ 6} The arguments raised in relator's objection regarding *Clark* are essentially the same as those raised to and addressed by the magistrate.

{¶ 7} The magistrate determined that it was not an abuse of discretion for the commission to deny relator's request for recalculation as relator failed to meet his burden of proof. The magistrate noted that relator's own testimony[1] contradicted his affidavit and that the commission found relator's self-serving affidavit was not persuasive in the absence of any documentation concerning employers relator contacted looking for employment.

{¶ 8} We agree that the rate set by the commission appears law. However, having reviewed the record we agree with the commission that relator did not meet his burden to trigger application of R.C. 4123.61 exceptions and therefore cannot show that the rate was substantially unjust. Relator's affidavit submitted with his first application merely states that he "was unemployed but actively seeking employment." In *Clark*, the relator submitted an affidavit averring that she had left the workforce to assume custody of her granddaughter who had been abused by her mother who was suffering from mental illness. Upon her return to work, the relator worked only a few hours per week to see how her granddaughter would adjust to her absence. In *Riley*, the relator had been "receiving other income making it unnecessary for him to work." *Id.* at 71.

{¶ 9} In *State ex rel. Cawthorn v. Indus. Comm.*, 78 Ohio St.3d 112, 114 (1997), the Supreme Court of Ohio noted that R.C. 4123.61 "provides standard AWW computation that is to be used in all but the most exceptional cases." Relator herein had numerous opportunities to supplement his affidavit and present evidence to show R.C. 4123.61 should be applied. Relator did not show that his is an exceptional case.

---

[1] The record before this court does not contain a transcript of the testimony and therefore we are unable to review the same.

{¶ 10} On review of the magistrate's decision, an independent review of the record, and due consideration of relator's objection, we find the magistrate has properly determined the pertinent facts and applied the appropriate law. We therefore overrule relator's objection to the magistrate's decision and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein.  Accordingly, the requested writ of mandamus is hereby denied.

*Objection overruled;*
*writ of mandamus denied.*

BROWN and LUPER SCHUSTER, JJ., concur.

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Anthony R. Tantarelli, | : | |
| Relator, | : | |
| v. | : | No.  16AP-700 |
| Decapua Enterprises, Inc. | : | (REGULAR CALENDAR) |
| and Industrial Commission of Ohio, | : | |
| Respondents. | : | |

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on March 21, 2017

---

*Michael J. Muldoon,* for relator.

*Michael Soto,* for respondent, Decapua Enterprises, Inc.

*Michael DeWine,* Attorney General, and *Natalie J. Tackett,* for respondent, Industrial Commission of Ohio.

---

### IN MANDAMUS

{¶ 11} Relator, Anthony R. Tantarelli, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied his motion to increase his average weekly wage ("AWW"), and ordering the commission to grant his request for an increase.

Findings of Fact:

{¶ 12} 1. Relator began working for Decapua Enterprises, Inc. ("Decapua") on July 16, 2013.

{¶ 13} 2. Relator sustained a work-related injury on August 12, 2013, and his workers' compensation claim has been allowed for the following conditions:

> Left hip contusion; left hand sprain; left rotator cuff strain; neck strain; left wrist sprain; left shoulder superior labral tear/slap lesion.

{¶ 14} 3. At the time he was injured, relator's hourly rate was $11.90. Decapua set relator's AWW at $22.26. Decapua arrived at this figure by dividing relator's total earnings of $1,157.51 by 52 weeks.

{¶ 15} 4. On February 10, 2014, relator filed a motion requesting that his AWW be set at $416.58. In support of his motion, relator attached an affidavit wherein he stated as follows:

> For the period from August 12, 2012 until I began my employment with the temporary agency, Dawson Resources in July 2013 I was unemployed but actively seeking employment.

{¶ 16} 5. Relator's motion was heard before a district hearing officer ("DHO") on April 29, 2014. The DHO denied relator's request on grounds that he failed to submit sufficient credible evidence, specifically stating:

> The Injured Worker's request to set the average weekly wage at $416.58 is denied. The District Hearing Officer finds that the Injured Worker has failed to submit sufficient credible evidence to exclude 49 weeks from the standard formula or support an alternative calculation. The Injured Worker could only identify three potential employers that he contacted during the alleged 49 week unemployment period and no historical wage information was submitted to the file.

{¶ 17} 6. Relator appealed and the matter was heard before a staff hearing officer ("SHO") on October 14, 2014. The SHO affirmed the prior DHO order and denied relator's request to recalculate his AWW, again finding that relator had failed to present sufficient evidence to exclude 49 weeks of unemployment. Specifically, the SHO order provides:

> The Injured Worker's request to set the average weekly wage at $416.58 is denied. The Staff Hearing Officer finds the Injured Worker has failed to establish the existence of special circumstances which would justify the use of an alternate calculation to the standard 52 week divisor used in

determining an average weekly wage. Specifically, the Staff Hearing Officer finds the Injured Worker has failed to justify his request to exclude 49 weeks of unemployment between 08/12/2012 and approximately 07/21/2013, when the Injured Worker began working for the Employer of record. The Injured Worker testified he last worked regularly in 2008 when he was self employed as a tow truck operator. The Injured Worker's affidavit, signed 01/23/2014, avers that he was unemployed but actively seeking work prior to his employment with the named Employer but this assertion remains undocumented and substantially unsupported. For instance, the Injured Worker was only able to identify three potential employers he sought employment with. Furthermore, the Injured Worker testified that he did engage in some "miscellaneous" work in 2012 described by his testimony as buying cars and selling car parts and hauling items to scrap yards. The Injured Worker testified, however, that he failed to file a tax return nor has he supplied any documentation concerning those earnings to the Industrial Commission. Accordingly, the Staff Hearing Officer finds the Injured Worker has failed to establish the existence of "special circumstances" as provided for in Revised Code 4123.61 and therefore the Staff Hearing Officer declines to apply any alternative calculation other than the standard 52 week divisor to this claim.

All of the evidence available to the Industrial Commission was reviewed and considered in rendering this decision.

{¶ 18} 7. Relator's further appeal was refused by order of the commission mailed November 5, 2014.

{¶ 19} 8. Relator filed a second motion on January 29, 2016, again asking that his AWW be recalculated. In support of his second motion, relator submitted evidence of his earnings in 2015, asserting that he earned $39,155.95. Relator attached copies of checks issued to him by K & K Towing and Recovery, LLC. Relator argued that the evidence of his increase in earnings two years after his date of injury constituted grounds for the commission to increase his AWW.

{¶ 20} 9. The DHO denied the request, stating:

The Injured Worker's request to reset the Average Weekly Wage in this claim, is denied. The District Hearing Officer finds that the evidence in file and presented at this hearing does not support this request.

The District Hearing Officer finds that the Injured Worker has not presented new evidence to justify the resetting of his Average Weekly Wage in this claim. The District Hearing Officer finds that the Injured Worker has not presented evidence of special circumstances which would warrant an increase in the Injured Worker's Average Weekly Wage.

Evidence was reviewed and considered.

{¶ 21} 10. Relator's appeal was heard before an SHO on July 14, 2016. The SHO denied the motion both on grounds that res judicata applied and on grounds that relator failed to demonstrate that special circumstances existed to warrant an alternative method of calculating his AWW. Specifically, the SHO order provides:

The C-86 motion, filed, 01/29/2016, request that the Average Weekly Wage be set pursuant to Ohio Revised Code 4123.61 is res judicata.

The Injured Worker's motion requests that the issue of the Average Weekly Wage be schedule[d] for hearing pursuant to R.C. 4123.61. At hearing, the Injured Worker's attorney requested that the Average Weekly Wage be set at $320.00 per week based upon the minimum hourly rate of pay of $8.00 per hour multiplied by 40 hours a week.

The Injured Worker argued that special circumstances exist to support an alternative method of calculating the Injured Worker's AWW than the standard method of considering the total earnings for the 52 week period of time prior to the industrial injury.

The Injured Worker argues that the Injured Worker worked for 27 years in his own business. The Injured Worker's construction business ended in 2002 per the Injured Worker's testimony at hearing. The Injured Worker's attorney argued that the Injured Worker made more money during the years that the Injured Worker operated his own business, several years before this industrial injury, than the year before the industrial injury (08/12/2012 through 08/12/2013). The Injured Worker's attorney also argued that in the year of 2014 the Injured Worker made more money than the year before the industrial injury as documented by the 1099 - miscellaneous income record for 2014 for the Injured Worker, which documents earnings for 2014 of $12,868.90. The Injured Worker's attorney also argued that in 2015 the Injured Worker earned approximately $39,000.

The Injured Worker submitted copies of checks which he [sic] were received by K & K Towing and Recovery. These checks demonstrate the Injured Worker was paid by the job for towing vehicles for K & K Towing. However, no 2015 1099-Misc wage documentation from K & K Towing is on file. It is not clear whether the earnings received by the Injured Worker for 2015 were claimed for tax and/or income purposes.

The Hearing Officer fails to find sufficient documentation that special circumstances exi[s]t to merit an alternative method of calculation of AWW due to the Injured Worker's prior and subsequent earning capacity. The Hearing Officer notes that there are no wages on file from when the Injured Worker operated his own business, which was remote in time (in 2002) nor is there sufficient wage documentation on file from 2015 subsequent to the industrial injury.

Notwithstanding the lack of sufficient documentation of special circumstances, this Hearing Officer finds the issue of whether special circumstances exist in order to utilize an alternative method of calculating the Average Weekly Wage was previously adjudicated by the Staff Hearing Officer on 10/14/2014. The 10/14/2014 Staff Hearing Officer specifically indicated in her order that the Injured Worker failed to demonstrate the existence of special circumstances which would justify the use of an alternative calculation to the standard 52 weeks divisor used to determine the Average Weekly Wage.

Based upon the 10/14/2014 Staff Hearing Officer (issued 10/17/2014) there were no special circumstances to merit the use of an alternative method of calculating the Injured Worker's Average Weekly Wage.

Therefore, this Hearing Officer finds that the issue of resetting the Average Weekly Wage due to special circumstances is res judicata.

{¶ 22} 11. Relator's further appeal was refused by order of the commission mailed August 9, 2016.

{¶ 23} 12. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 24} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 25} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 26} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 27} Under workers' compensation law, benefits payable to claimants are calculated based upon the figure known as the AWW. R.C. 4123.61 provides:

> The average weekly wage of an injured employee at the time of the injury or at the time disability due to the occupational disease begins is the basis upon which to compute benefits.
>
> In cases of temporary total disability the compensation for the first twelve weeks for which compensation is payable shall be based on the full weekly wage of the claimant at the time of the injury or at the time of the disability due to occupational disease begins.
>
> * * *
>
> In ascertaining the average weekly wage for the year previous to the injury, or the date the disability due to the

occupational disease begins any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.

In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable the administrator to do substantial justice to the claimants, provided that the administrator shall not recalculate the claimant's average weekly wage for awards for permanent total disability solely for the reason that the claimant continued working and the claimant's wages increased following the injury.

{¶ 28} R.C. 4123.56(A) provides that, for the first 12 weeks of total disability, a qualifying injured worker's entitlement to temporary total disability ("TTD") compensation is 72 percent of the employee's full weekly wage ("FWW"), subject to statutory maximum and minimum amounts. The determination of an injured worker's FWW looks to be injured worker's wages in the seven days or six weeks prior to the industrial injury. *See State ex rel. FedEx Ground Package Sys., Inc. v. Indus. Comm.*, 126 Ohio St.3d 37, 2010-Ohio-2451. AWW is generally calculated by dividing the injured worker's wages for the year preceding the date of injury by 52 weeks R.C. 4123.61.

{¶ 29} In the present case, the commission used the standard formula for determining relator's AWW. Relator argued that, in the year preceding his injury, he was unemployed for 49 weeks. Relator submitted an affidavit asserting that in 2012 and 2013, he had been actively seeking work and that, therefore, those 49 weeks should be excluded from the calculation of his AWW. The commission determined that relator failed to present sufficient evidence warranting the exclusion of those 49 weeks. Inasmuch as his affidavit was the only evidence relator submitted to support his argument that those 49 weeks should be excluded, it is apparent that the commission did not find this self-serving affidavit to be persuasive in the absence of any documentation concerning employees relator contacted looking for employment. Furthermore, at the hearing, relator testified that he did perform some work in 2012 but did not file tax returns. Relator's own

testimony contradicted his affidavit. It was not an abuse of discretion for the commission to deny relator's request as he failed to meet his burden of proof.

{¶ 30} In 2016, when relator again sought an increase in his AWW, he argued that his ability to earn approximately $39,000 in 2015 constituted sufficient evidence for the commission to grant his motion and increase his AWW. Relator argued that the Supreme Court of Ohio's decision in *State ex rel. Clark v. Indus. Comm.*, 69 Ohio St.3d 563 (1994), supported his argument. For the reasons that follow, this magistrate disagrees.

{¶ 31} Gladys Clark began working for Bill Knapp's Ohio, Inc. the first week of July 1988 and sustained a work-related injury on July 29, 1988. The Ohio Bureau of Workers' Compensation ("BWC") originally set her AWW at $13.49 by dividing her earnings for her four weeks of employment by 52.

{¶ 32} Clark filed a motion with the commission asking that her AWW be increased. In support, Clark filed the following affidavit:

> "1. I worked as a waitress at a Bob Evans Restaurant from 1983 to 1986. My attorney has attempted to obtain wage information to document my earning power during that period but Bob Evans has been unable to produce those wage records.
>
> "2. In 1986, extraordinary circumstances in my personal life forced me to leave the work force. Because my daughter suffers from severe psychiatric conditions, I was forced to leave the work force in order to get custody of my granddaughter, who was an abused child. I was unable to work for several years due to the various legal proceedings and the need to care for my grandchild.
>
> "3. On or about July 1, 1988, I attempted to return to work on a very limited basis (i.e., a couple of hours per week) at Bill Knapps [sic] in order to see how my granddaughter would adjust to my absence from the home. The attached C-94-A has been provided by Bill Knapps [sic] and shows my limited earnings during that period. The injury in this claim occurred while I was working only several hours per week.
>
> "4. While I working on a more regular basis for Bob Evans between 1983 and 1986, my typical weekly earnings, including salary and tips, was [sic] approximately $130.00[.]"

*Id.* at 563-64.

{¶ 33} Clark's motion was heard before a DHO who granted it in part.  Specifically, the DHO increased her AWW to $20, explaining as follows:

> "Average weekly wage * * * is set at $20.00. This amount is calculated pursuant to R.C. 4123.61, using the standard of substantial justice.
>
> "Per claimant's testimony at hearing, claimant voluntarily removed herself from [the] work force to care for her 14 year old grandchild and returned to [the] work force only four (4) weeks prior to her injury. Claimant was scheduled to work only two (2) hours a week at Bill Knapp's and worked only two (2) hours a week for the four (4) weeks prior to her injury. There are no wages for the remaining 48 weeks of the year prior to her injury since her removal from the work force. Claimant indicated that she earned $2.01 per hour plus tips which she indicated was a few dollars. Average weekly wage and full weekly wage is [sic] set at $20.00 based upon an hourly rate set at $10.00 multiplied by two (2) hours a week (the number of hours a week claimant worked)."

*Id.* at 564.

{¶ 34} Clark appealed and submitted additional information indicating that she "was currently employed full-time at Lazarus" with "weekly earnings of $208."  *Id.* Relator attached numerous pay stubs in support of this second affidavit.  Despite the additional evidence, the SHO affirmed the prior DHO order.

{¶ 35} Ultimately, a writ of mandamus was granted by the Supreme Court and the matter was returned to the commission for further consideration.  Specifically, the court stated:

> "In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the commission, in determining the average weekly wage in such cases, shall use such method as will enable it to do substantial justice to the claimants." R.C. 4123.61.
>
> Two questions are accordingly raised: (1) Did claimant demonstrate "special circumstances" so as to warrant a departure from the standard AWW formula? and (2) If so, is the current AWW substantially just? For the reasons to follow, we answer only the first question in the affirmative.

In invoking the "substantial justice" provision to raise claimant's AWW, the district hearing officer necessarily found that a "special circumstance" existed. The hearing officer did not, however, identify the "special circumstance." In [*State ex rel. Riley v. Indus. Comm.*, 9 Ohio App.3d 71 (10th Dist.1983)], the proximity of the claimant's date of injury to his reentry into the work force constituted a "special circumstance." We find the same to exist in this case.

In *Riley*, the claimant entered the labor force on March 16, 1980. Prior to that time, the receipt of other income had made it unnecessary for him to work. On April 5, 1980, Riley was injured. The bureau set his AWW at $10.92, dividing income received from March 16, 1980 through April 5, 1980 by fifty-two.

In reviewing the figure, the appellate court first found that R.C. 4123.61's exclusion for involuntary unemployment did not apply, since claimant had voluntarily stayed out of the work force. Resolution thus hinged on whether claimant had "shown special circumstances upon which his average weekly wage cannot justly be determined by applying the usual calculation which resulted in the $10.92 rate found by the commission. If so, the Industrial Commission is required to use another method to enable it to do substantial justice to the relator." *Id.* at 72, 9 OBR at 92, 458 N.E.2d at 430.

The court concluded:

"[T]he total circumstances indicate that the commission abused its discretion and acted contrary to R.C. 4123.61 in determining relator's average weekly wage by utilizing the salary for three weeks as that for the entire year. There were special circumstances involved since relator first became employed three weeks before his injury, and an unjust result was reached by considering only those three weeks. The three weeks were obviously an unjust barometer of relator's prospective future average wages that would be lost if he could not work." *Id.* at 73, 9 OBR at 93, 458 N.E.2d at 431.

We find Riley instructive on the question of substantial justice as well. In this instance, claimant submitted evidence that demonstrated that she was, by then, regularly working 37.5 hours per week. That evidence, coupled with claimant's averment of earnings at Bob Evans, negates the commission's assertion that $ 20.00 is a just barometer of the amount of wages, and commensurately, the amount of

> work that claimant was accustomed to, satisfied with and planned to continue.
>
> Considerable debate surrounds the voluntariness of claimant's reduced hours. In this case, we agree that claimant's reduced hours, while commendably motivated, were nonetheless voluntary. It does not, however, automatically follow that because reduced hours are voluntarily undertaken, any AWW, no matter how low, is substantially just. If this were true, the only provision for adjustment would be R.C. 4123.61's "involuntary unemployment" exemption. No substantial justice exception would exist.

*Id.* at 565-66.

{¶ 36} In finding that a writ of mandamus was appropriate, the court relied on its earlier decision in *State ex rel. Riley v. Indus. Comm.*, 9 Ohio App.3d 71 (10th Dist.1983). Although relator argues that he has presented a factual situation which is similar to the situations presented in *Riley* and *Clark*, the magistrate disagrees.

{¶ 37} In *Riley*, the claimant had substantial other income making it unnecessary for him to work in the years which preceded his work-related injury. When Riley was injured approximately three weeks after his employment began, the court ultimately found that Riley had shown special circumstances on which his AWW could not be justly determined by applying the usual calculations. The court found that the utilization of the three weeks was an unjust barometer of Riley's perspective future average wages that would be lost if he was not able to work.

{¶ 38} In the present case, relator was unemployed for the majority of the year preceding his job with Decapua and his subsequent work-related injury. Relator argued that he actively sought employment in the year preceding his injury, but failed to submit any evidence. Relator did not present any evidence that it was unnecessary for him to work because he had other income from which he could support himself. Although relator submitted an affidavit asserting that he had been actively seeking employment for a year, relator did not present any evidence to support his self-serving affidavit. Although relator also testified that, in reality he had been working, relator admitted he did not file tax returns and was unable to demonstrate that he actually had income and how much that income was. Relator simply did not meet his burden of proof. While relator did, in

his second motion for an increase in his AWW, present evidence that he was now earning considerably more, his situation still was not similar to Riley's. Relator had no income for the year preceding his work-related injury other than the three weeks he worked for Decapua, whereas Riley had substantial other income which he received in the year preceding his employment and subsequent injury.

{¶ 39} Clark had been employed by Bob Evans from 1983 to 1986, at which time she left the workforce to care for her granddaughter. Two years later, Clark returned to employment with Bill Knapp's Ohio, Inc. on a limited basis to see how her granddaughter would adjust to her absence from the home. At that time, she was injured. At the time the matter was heard before an SHO, Clark submitted evidence that she was currently employed full-time at Lazarus with weekly earnings of $208. In concluding that the commission's determination of Clark's AWW did not do substantial justice, the court noted that although Clark's absence from the workforce had been voluntary, that fact alone was not determinative. Given the evidence of her earnings at Bob Evans prior to her absence from the workforce coupled with her subsequent earnings at Lazarus, the court found that the commission abused its discretion.

{¶ 40} By comparison, relator has not provided any reason for his unemployment in the year preceding his employment with Decapua and subsequent injury. Both Riley and Clark provided reasons for their absence from the workforce: Riley had other income and did not need to work and Clark was caring for her granddaughter. Although the court did state that the voluntariness of absence from the workforce was not necessarily determinative, the court did not say that voluntary absence from the workforce could not be determinative. Here, relator provided no explanation for why he was not working in the year preceding his injury and, although he asserted he had been actively seeking employment, he failed to substantiate that assertion with any evidence whatsoever. Further, if an ability to later secure a higher paying job was enough to support a motion to increase AWW, this would be a relatively easy way for injured workers to get an increase in their AWW no matter why they were absent from the workforce preceding the date of injury. That is not what is anticipated by the law.

{¶ 41} It is this magistrate's decision that this court should deny relator's request for a writ of mandamus for two reasons. First, relator's factual situation differs

substantially from the situations presented in both *Riley* and *Clark.* Second, relator had numerous opportunities to present evidence to support his motions but he failed to do so. Relator failed to meet his burden of proof. The commission was not required to rely on relator's evidence to find the existence of special circumstances in this case. As such, this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

## NOTICE TO THE PARTIES

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).