[Cite as *State ex rel. Ritzie v. Reece-Campbell, Inc.*, 2014-Ohio-2782.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Fred Ritzie, | : | |
| Relator, | : | |
| v. | : | No. 13AP-669 |
| Reece-Campbell, Inc. and | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio, | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on June 26, 2014

*Law Offices of James A. Whittaker, LLC, Laura I. Murphy*
and *James A. Whittaker,* for relator.

*Michael DeWine,* Attorney General, and *LaTawnda N.
Moore,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

O'GRADY, J.

{¶ 1} Relator, Fred Ritzie, has filed this original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying relator's application for temporary total disability ("TTD") compensation and find that he is entitled to such compensation.

{¶ 2} Pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law, which is appended hereto. The magistrate concluded the

commission did not abuse its discretion when it denied relator's application for TTD compensation. The magistrate recommended we deny the request for a writ of mandamus as relator could not show a clear legal right to have the commission vacate its order and award him such compensation. None of the parties filed objections to the magistrate's findings of fact, but relator filed objections to the magistrate's conclusions of law.

{¶ 3} To be entitled to a writ of mandamus, relator must demonstrate a clear legal right to the requested relief, a corresponding clear legal duty on the part of the respondent to provide the requested relief, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Ervin v. Barker*, 136 Ohio St.3d 160, 2013-Ohio-3171, ¶ 9.

{¶ 4} After an independent review of the record, we adopt the magistrate's findings of fact as our own with the following exception. We modify the magistrate's decision to reflect that Dr. Nobbs neglected to indicate on the July 2012 C-84 what position relator had at the time of his injury. Additionally, we modify the magistrate's decision to incorporate the fact that Dr. Nobbs certified the allowed conditions that prevented relator's return to work were the annular tear at L4-L5 and biforaminal stenosis at L3-4 and L4-5.

{¶ 5} Relator's objections to the magistrate's conclusions of law repeat many of the arguments he made to the magistrate. Relator emphasizes that he has never been released to return to his former position or found to have reached maximum medical improvement ("MMI"). However, as the magistrate indicated, this does not prove relator was unable to return to his former position beginning December 8, 2011. This is particularly true given the fact that the allowed conditions which previously rendered relator temporarily and totally disabled, differ from the allowed conditions Dr. Nobbs cited in the July 2012 C-84.

{¶ 6} Relator also argues an award of TTD compensation is warranted because additional treatment was authorized on his claim in the relevant time frame, in November 2009 his percentage of permanent partial disability was increased, and in July 2012 allowed conditions were added to his claim. However, as the magistrate indicated, these facts do not prove relator was unable to return to his former position beginning December 8, 2011. Dr. Nobbs did certify in the July 2012 C-84 that relator was unable to

return to work due to certain allowed conditions. However, Dr. Nobbs did not identify in the C-84 what position relator held at the time of his injury. Even assuming Dr. Nobbs evaluated the correct position, the commission denied the TTD request because it found Dr. Nobbs' C-84 certification lacked credibility. As the magistrate pointed out, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission to resolve as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165, 169 (1981).

{¶ 7} Relator contends the magistrate erroneously stated the law did not require the commission to cite a valid basis for finding his evidence unpersuasive. We agree this is a misstatement of law inasmuch as this court has previously found that, in a case such as this, where "the commission rejects uncontroverted evidence instead of relying on opposing evidence, the commission is required to provide a brief explanation for its rejection." *State ex rel. Standerfer v. Indus. Comm.*, 10th Dist. No. 07AP-930, 2008-Ohio-3947, ¶ 22, citing *State ex rel. Davis v. Indus. Comm.*, 10th Dist. No. 01AP-1371, 2002-Ohio-4444. Therefore, we modify the magistrate's conclusions of law to correct this error.

{¶ 8} However, in this case, the commission did provide a reasonable basis for its rejection of relator's evidence. The commission highlighted the fact that Dr. Nobbs' office notes did not reflect that relator was temporarily and totally disabled during the time frame at issue. The first time Dr. Nobbs opined relator was temporarily and totally disabled due to the annular tear at L4-L5 and biforaminal stenosis at L3-4 and L4-5 was in the July 2012 C-84. As the commission suggested, it was suspicious that Dr. Nobbs certified relator as being temporarily and totally disabled beginning December 8, 2011—the day after relator settled his other workers' compensation claim and his TTD compensation for that claim ended—when Dr. Nobbs never opined that relator was temporarily and totally disabled because of those conditions prior to July 2012. Thus, it was not unreasonable for the commission to reject Dr. Nobbs' opinion. *See, e.g., State ex rel. Johnston v. R.W. Sidley, Inc.*, 10th Dist. No. 10AP-758, 2011-Ohio-4516, ¶ 20-21, 53-54, 65 (finding no abuse of discretion where commission denied a requested period of TTD compensation, in part, because the request was not supported by contemporaneous medical evidence, specifically, there was no evidence relator received treatment during

some of the period and office notes from the remainder of the period gave no indication relator was temporarily and totally disabled).

{¶ 9} Contrary to relator's contention, the commission did not just review selected records and fashion its own medical opinion in this case. Additionally, the commission did not impose, and the magistrate did not endorse, the imposition of a heightened burden of proof on relator. Nor did the magistrate ignore R.C. 4123.95, which calls for a liberal construction of the workers' compensation statutes in favor of employees. Instead, the commission made a determination about the credibility of Dr. Nobbs, which was within it prerogative, and the magistrate properly deferred to this determination.

{¶ 10} Finally, relator complains about the magistrate's comment that Dr. Nobbs' records could support a finding that the allowed conditions in the 1994 claim have reached MMI, which would mean relator was not entitled to a new period of TTD compensation. Relator argues this finding makes no sense because Dr. Nobbs certified him as temporarily and totally disabled and had the requisite expertise to evaluate relator's ability to return to his former position. However, the magistrate's comment simply reiterated the commission's point that Dr. Nobbs' medical records do not reflect that relator was temporarily and totally disabled during the requested period. If Dr. Nobbs' records could support a finding of TTD or no TTD, that fact calls into question the credibility of his C-84 certification.

{¶ 11} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of relator's objections, we overrule the objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law as modified herein. Accordingly, we deny relator's request for a writ of mandamus.

*Objections overruled; writ of mandamus denied.*

BROWN and LUPER SCHUSTER, JJ., concur.

_____

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Fred Ritzie, | : | |
| Relator, | : | |
| v. | : | No. 13AP-669 |
| Reece-Campbell, Inc. and Industrial Commission of Ohio, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

MAGISTRATE'S DECISION

Rendered on February 26, 2014

*Law Offices of James A. Whittaker, LLC, Laura I. Murphy* and *James A. Whittaker,* for relator.

*Michael DeWine*, Attorney General, and *LaTawnda N. Moore,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 12} Relator, Fred Ritzie, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's application for temporary total disability ("TTD") compensation and ordering the commission to find that he is entitled to that compensation.

Findings of Fact:

{¶ 13} 1. Relator sustained a work-related injury on November 10, 1994 while doing demolition work for the construction company Reece-Campbell, Inc. ("Reece"). Relator's workers' compensation claim was originally allowed for the following conditions:

> Sprain lumbosacral; lumbar disc displacement; post-operative infection.

{¶ 14} 2. On August 2, 1995, Reece offered relator a light-duty position.

{¶ 15} 3. Relator returned to work in a light-duty capacity with Reece on September 25, 1995.

{¶ 16} 4. Following a hearing held on July 25, 2008 before a district hearing officer ("DHO"), relator's claim was allowed for the following additional significant back conditions:

> Lumbar intervertebral disc displacement at L4-5, accelerated lumbar spondylosis at L5-S1, accelerated lumbar facet hypertonic change at L3-4 and accelerated lumbar degenerative disc disease at L3-4 and L5-S1.

{¶ 17} The DHO relied on medical reports from relator's physician of record Brian R. Nobbs, D.C., dated March 31 and June 9, 2008.

{¶ 18} 5. Following a hearing held on November 13, 2008, a DHO awarded relator TTD compensation from August 7, 2007 to April 6, 2008 finding that his allowed conditions rendered him unable to return to his former position of employment. The DHO noted that relator returned to work on April 7, 2008. (This employment was for a different employer.) The DHO relied on a C-84 and office notes of Dr. Nobbs.

{¶ 19} 6. Following a hearing before the commission on November 12, 2009, relator was granted an increase in his percentage of permanent partial disability ("PPD"), which the commission found was currently 29 percent.

{¶ 20} 7. Dr. Nobbs authored a report dated March 3, 2010. Apparently this report was authored in response to a file review conducted by a Dr. Sterns and discussed a new period of disability beginning December 4, 2008. That report provides, in pertinent part:

Mr. Ritzie presented on 12-4-08 with an exacerbation of his work related injuries. I determined that he was unable at that time to perform the job duties for the job upon which he was injured. * * * Mr. Ritzie's inability to work as of 12-4-08 is supported by objective medical evidence and exam findings from that date. This represents a new and changed circumstance which explains Mr. Ritzie's inability to work as of that date.

* * *

My notes of 12-4-08 clearly show that Mr. Ritzie was having severe pain that day. He was also having severe objective findings including fixation, spasm, decreased strength and decreased [range of motion].

* * *

The key fact is that Mr. Ritzie presented to this office with a new and changed circumstance. Mr. Ritzie presented to this office on 12-4-08 for treatment of an exacerbation of his condition due to activities of daily living. Based upon a reasonable degree of medical certainty, this exacerbation would not have occurred if not for Mr. Ritzie's original 1994 work injury which has left Mr. Ritzie's lumbar region unstable and prone to flare-ups and exacerbations of his condition. Mr. Ritzie had positive objective findings on 12-4-08 due to his exacerbation which are noted on his C-84 and illustrate his inability to work at that time due to his allowed conditions.

* * *

Mr. Ritzie's requested period of temporary total disability is consistent with the conditions which he has which are severe and chronic conditions which have a tendency to have Exacerbations or flare-ups.

{¶ 21} 8. Following a hearing held before a staff hearing officer ("SHO") on April 14, 2010, relator was granted a new period of TTD compensation from December 4, 2008 through July 10, 2009. The SHO stated:

On the face of the C-84 form, the Injured Worker stated that he returned to work on 07/11/2009.

It is the finding of the Staff Hearing Officer that immediately prior to the requested period of compensation, the Injured Worker was working for a different Employer than the Employer of record as a laminator press operator.

It is the finding of the Staff Hearing Officer that the Injured Worker was unable to return to and perform the duties of his former position of employment from 12/04/2008 through 07/10/2009 due to the allowed conditions in the claim.

Therefore, it is hereby the order of the Staff Hearing Officer that the Injured Worker is awarded temporary total disability compensation for the closed period from 12/04/2008 through 07/10/2009.

This order is based upon the Injured Worker's testimony presented at hearing, the C-84 request, completed by the Injured Worker on 01/10/2010, the C-84 report from Dr. Nobbs dated 01/13/2010, and the treatment records of Dr. Nobbs contained in the claim file.

{¶ 22} 9. On January 24, 2010, relator was involved in a motor vehicle accident while employed with the new employer. This 2010 claim was allowed for cervical, thoracic, and shoulder injuries and, although there are no records concerning the 2010 claim in the stipulation of evidence, it appears that Dr. Nobbs began treating relator for the conditions allowed in the 2010 claim and was certifying that relator was temporarily and totally disabled and unable to return to work for his new employer as a truck driver.

{¶ 23} 10. Following a hearing on April 27, 2011 before a DHO, relator's request for additional chiropractic treatment in the 1994 claim was allowed.

{¶ 24} 11. In December 2011, relator reached a final settlement agreement and release with the employer for whom he was working when he sustained his 2010 injury. That claim was settled for $99,999.00. The 1994 claim was not part of the settlement.

{¶ 25} 12. The stipulation of evidence contains treatment notes from Dr. Nobbs beginning December 8, 2011 through July 24, 2012. In the December 8, 2011 note, Dr. Nobbs indicated that he had been treating relator for his 1994 injury since August 7, 2007. However, there are no treatment notes in the record from Dr. Nobbs addressing relator's treatment in the 1994 claim while he was being treated for the 2010 claim.

{¶ 26} 13. The record also contains records from Jonathan J. Paley, M.D., from February 23 through July 12, 2012 indicating that relator received a series of epidural injections during that time period.

{¶ 27} 14. The office notes of Drs. Nobbs and Paley indicate that Dr. Nobbs' treatments helped relator maintain a certain level of functioning and that, when he experienced an exacerbation of his pain, Dr. Paley proceeded with epidural injections.

{¶ 28} 15. Relator asked that he be permitted to receive certain pain medications in the 1994 claim. In an order mailed April 25, 2012, the Bureau of Workers' Compensation ("BWC") approved relator's request to receive Percocet and Tramadol.

{¶ 29} 16. In an order mailed July 12, 2012, the BWC allowed relator's claim for the following additional conditions:

> Annular tear at L4-5; Retrolisthesis at L5-S1[;] [and] biforaminal stenosis L3-4 L4-5.

{¶ 30} 17. Dr. Nobbs completed C-84s beginning July 31, 2012 certifying that relator was unable to return to his former position of employment with Reece beginning December 8, 2011 and continuing.

{¶ 31} 18. Relator's request for TTD compensation was heard before a DHO on September 6, 2012. The DHO granted relator's request for TTD compensation beginning December 8, 2011 based on the C-84 of Dr. Nobbs dated July 31, 2012, as well as the aforementioned office notes of Drs. Nobbs and Paley.

{¶ 32} 19. The BWC appealed and the matter was heard before an SHO on October 16, 2012. The SHO affirmed the prior DHO order noting that the 2010 claim had been allowed for different conditions than the 1994 claim and noting that the BWC had not obtained a medical opinion to refute relator's medical evidence.

{¶ 33} 20. The BWC appealed and the matter was heard before a deputy on December 5, 2012. The Deputy vacated the SHO order and denied relator's request for TTD compensation finding that relator had permanently removed himself from the workforce for reasons unrelated to the 1994 industrial injury and was, therefore, ineligible to receive TTD compensation. The Deputy specifically indicated that he relied on testimony taken at the hearing.

{¶ 34} 21. Claimant asked the commission to exercise its continuing jurisdiction, and the commission issued an interlocutory order granting that request as follows:

> It is the finding of the Industrial Commission that the Injured Worker has presented evidence of sufficient probative value to warrant adjudication of the request for reconsideration regarding the alleged presence of a clear mistake of fact in the order from which reconsideration is sought, and a clear mistake of law of such character that remedial action would clearly follow.
>
> Specifically, it is alleged that the Deputy erred in citing reliance on witness testimony when the Injured Worker was not present at the hearing, and the Deputy does not identify the specific person and the specific testimony upon which he relied. Sua sponte, the Commission notes an arguable mistake of law when the Deputy denied temporary total disability compensation "forward."

{¶ 35} 22. Thereafter, a hearing was held before the commission on April 16, 2013. The commission denied relator's request for TTD compensation specifically finding that he failed to present persuasive medical evidence to establish that he was again temporarily and totally disabled based on the conditions allowed in the 1994 claim. Specifically, the commission stated:

> It is the finding of the commission the Injured Worker did not present persuasive medical evidence to establish he is again temporarily and totally disabled in this claim. It is the finding of the Commission that the opinion of Brian R. Nobbs, D.C., that the Injured Worker is temporarily and totally disabled for the period noted in this order is not persuasive.
>
> Dr. Nobbs had been providing the Injured Worker with ongoing chiropractic treatment in Claim No. 94-544482 since prior to the date of injury in Claim No. 10-804484 and continued after the 2010 injury. Dr. Nobbs' office notes in Claim No. 94-544482, from 01/20/2010 to 02/07/2012, indicated the Injured Worker had been receiving treatment for his chronic condition, and one note indicated he was improving. Not once did Dr. Nobbs opine the Injured Worker was disabled due to the allowed conditions in this claim. Dr. Nobbs noted in his 04/01/2011 report that the treatment the Injured Worker had been receiving allowed

him to continue to work until the motor vehicle accident in 2010.

Both Dr. Nobbs and Jonathan Paley, M.D., provided ongoing treatment to the Injured Worker in Claim No. 10-804484 from the date of injury, and Dr. Nobbs opined the Injured Worker was disabled due to the conditions allowed in Claim No. 10-804484. The Commission agreed with Dr. Nobbs and ordered payment of temporary total disability compensation until 12/07/2011, the date on which the Injured Worker decided to settle Claim No. 10-804484 with the employer of record.

Dr. Nobbs in the instant claim has never explained medically how the Injured Worker suddenly became temporarily and totally disabled on 12/08/2011, when he had previously been certifying temporary total disability compensation in the 2010 claim. In fact, Dr. Nobbs' office notes in Claim No. 94-544482 do not reflect the Injured Worker is temporarily and totally disabled. The Commission is cognizant that a person can be disabled due to conditions in different claims. However, it is necessary for Dr. Nobbs to explain in a medical report why after opining for two years that Injured Worker was disabled in Claim No. 10-804484 and, when the Injured Worker's 2010 claim settled, a day later, he then opined the Injured Worker was suddenly temporarily and totally disabled in Claim No. 94-54482. Furthermore, Dr. Nobbs does not explain why in Claim No. 10-804484, he opined on a C-84, dated 11/15/2011, that the Injured Worker was temporarily and totally disabled due to the conditions allowed in that claim for the same period of time that he subsequently opined the Injured Worker was disabled in Claim No. 94-544482.

The Commission finds there is no persuasive medical evidence upon which to find the Injured Worker was temporarily and totally disabled as of 12/08/2011, in Claim No. 94-544482. The Office notes of Dr. Nobbs from 01/20/2010 to 02/07/2012 in Claim No. 94-544482 noted the treatment and did not mention the Injured Worker was disabled. In addition, the office note dated 12/15/2011 indicated the Injured Worker's condition was improving. The 04/01/2011 report of Dr. Nobbs documented the Injured Worker's need for treatment in his 1994 claim, the reason for the treatment, and how the treatment allowed the Injured Worker to stay in the work force until the 2010 incident; this

report did not opine that the Injured Worker was disabled due to the conditions in Claim No. 94-544482. As a result, the commission finds the Injured Worker has not met his burden of proof that he was temporarily and totally disabled for the period noted in this order.

{¶ 36} 23. Thereafter, relator filed this mandamus action.

Conclusions of Law:

{¶ 37} Relator argues that the commission abused its discretion by determining that he failed to present sufficient persuasive evidence in support of his application for TTD compensation. Specifically, relator argues: (1) the fact that the commission granted him an increase in his PPD, authorized additional medical treatment, and allowed additional conditions, all based on the same quality of evidence he submitted in support of his application for TTD compensation, points to a worsening of his back condition; (2) the commission failed to cite any valid basis for finding that his evidence was not persuasive; and (3) the commission acknowledged that Dr. Nobbs' treatment notes from January 20, 2010 through February 7, 2012 showed that he had a chronic condition, and it was immaterial that Dr. Nobbs never indicated that he remained unable to return to his former position of employment.

{¶ 38} The magistrate finds that the commission did not abuse its discretion when it found that relator's evidence was not sufficient and persuasive to support the requested period of TTD compensation. The commission is the exclusive evaluator of the evidence, and this court cannot and should not second guess the commission's determination.

{¶ 39} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 40} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of

mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record.  *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986).  On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate.  *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987).  Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.  *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 41}  TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment.  Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached maximum medical improvement ("MMI").  *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 42}  After TTD compensation has been terminated for any reason, a claimant must demonstrate that new and changed circumstances exist which again render claimant temporarily and totally disabled.  *State ex rel. Bing v. Indus. Comm.*, 61 Ohio St.3d 424 (1991).

{¶ 43}  Relator's first and second arguments are interrelated and will be addressed together.  Relator argues that, since the commission granted him an increase in his PPD, authorized additional treatment, and allowed additional conditions based on the same quality of evidence which he submitted in support of his application for TTD compensation, it is clear that his back condition continued to worsen, and the commission failed to cite any valid basis for finding that his evidence was not persuasive.

{¶ 44}  Relator fails to cite any case law to support his contention that the mere  fact that the commission granted him an increase in his PPD, authorized additional treatment, and allowed additional conditions necessarily supports the conclusion that he was temporarily and totally disabled.

{¶ 45} The Supreme Court of Ohio has articulated a three-prong test for the authorization of medical services: (1) are the medical services reasonably related to the industrial injury, that is, the allowed conditions; (2) are the services reasonably necessary for treatment of the industrial injury; and (3) is the cost of such service medically necessary? *State ex rel. Miller v. Indus. Comm.*, 71 Ohio St.3d 229 (1994). The Supreme Court has never indicated that a claimant must also be disabled before treatment can be authorized, nor has the Supreme Court or this court ever indicated that the authorization of medical treatment constitutes proof that a claimant is temporarily and totally disabled. Instead, the fact that additional treatment has been authorized could constitute "some evidence" in support of an application for TTD compensation; however, it is not necessarily indicative. Furthermore, even where a claimant's allowed conditions have reached MMI, it is understood that MMI is a treatment plateau at which no fundamental change is expected within a reasonable medical probability in spite of continuing medical or rehabilitative procedures. *See* Ohio Adm.Code 4121-3-32(A)(1).

{¶ 46} The record here is clear, relator's 1994 injury has resulted in a chronic low back condition. At one point in time, relator received TTD compensation in the 1994 claim. Further, it is undisputed that relator never returned to nor was he able to return to his former position of employment where he was working when the 1994 injury occurred. Lastly, the commission never found that the allowed condition in the 1994 claim had reached MMI. TTD compensation was terminated when relator could again return to his new job. Relator did experience an exacerbation of the conditions allowed in the 1994 claim; however, it is clear that those symptoms subsided following treatment with Drs. Nobbs and Paley. However, none of this is conclusive evidence that relator's allowed conditions in the 1994 claim rendered him temporarily and totally disabled during the requested period. A review of the medical records of Dr. Nobbs could equally support a finding that the allowed conditions in that 1994 claim have reached MMI and, if that was the case, relator would not be entitled to a new period of TTD compensation. Again, this evidence could be cited by the commission as some evidence to support an award of TTD compensation; however, it is not conclusive evidence of that fact.

{¶ 47} Furthermore, the fact that relator's 1994 claim was allowed for additional conditions in July 2012 does not guarantee eligibility for a new period of TTD

compensation.  In *State ex rel. Ramsey v. Frisch Fairborn, Inc.,* 10th Dist. No. 08AP-995, 2009-Ohio-4485, the commission granted additional conditions in the claimant's claim.  Thereafter, the claimant sought a new period of TTD compensation which the commission denied.  In upholding the commission's determination, this court noted that the medical evidence presented failed to demonstrate that there had been objective changes in the claimant's condition.

{¶ 48} Considering the medical evidence here, Dr. Nobbs' office notes, which only span the time November 15, 2011 through February 3, 2012 and February 7 through July 24, 2012, indicate that relator's low back condition, while chronic, has been stable.  Dr. Nobbs continually opined that relator needed continuing treatment in order to maintain his current level of functioning.  The fact that the record indicates that relator had an exacerbation of his allowed conditions in 2008 and again in December 2011 when relator was referred to Dr. Paley for epidural steroid injections, does not support a change in circumstances here because, following Dr. Paley's treatment, Dr. Nobbs noted that relator's pain had returned to the same level and he still needed continuing medical care to maintain his current level of functioning.  Furthermore, to the extent that relator contends that the commission was required to cite a valid basis for finding that his evidence was not persuasive, relator is mistaken.  There is no such requirement in the law.

{¶ 49} Relator's final argument is that the commission abused its discretion by requiring that Dr. Nobbs should have explained why he was opining that relator was suddenly temporarily and totally disabled in the 1994 claim when Dr. Nobbs had recently certified that he was temporarily and totally disabled in the 2010 claim.  Relator's argument is that, since he never was released to return to the former position of employment which he held at the time he was injured in 1994, he has essentially remained temporarily and totally disabled since 1994.  Relator again argues that TTD in the 1994 claim ceased when he accepted lighter duty employment and that his allowed conditions had never been found to have reached MMI.  Therefore, relator argues that the conditions in the 1994 claim render him temporarily and totally disabled.

{¶ 50} While relator's statements are true, those facts do not automatically guarantee that he was entitled to an award of TTD compensation for the requested time

period.  Relator had to show new and changed circumstances warranted a new period of compensation.  Questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder.  *Teece.*  The determination of disputed factual situations is within the final jurisdiction of the commission, and this determination is subject to correction by an action in mandamus only upon a showing of an abuse of discretion.  *State ex rel. Allied Wheel Prods., Inc. v. Indus. Comm.*, 166 Ohio St. 47 (1956).  Furthermore, it is immaterial whether other evidence, even if greater in quality and/or quantity, supports a decision contrary to the commission's.  *State ex rel. Pass v. C.S.T. Extraction Co.*, 74 Ohio St.3d 373 (1996).

{¶ 51} Relator bears the burden of proving that he was entitled to an award of TTD compensation.  While relator did present evidence to the commission, the commission did not find that evidence to be persuasive.  Even though relator disagrees with the commission's determination and disagrees with the commission's explanation, the fact remains the same:  the commission exercised its discretion and determined that the medical evidence relator submitted was not persuasive.  Finding that relator has not demonstrated that the commission abused its discretion, relator's request for a writ of mandamus should be denied.

{¶ 52} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in denying his application for TTD compensation, and this court should deny his request for a writ of mandamus.


/S/ MAGISTRATE
STEPHANIE BISCA BROOKS


NOTICE TO THE PARTIES

Civ.R.  53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).