[Cite as *State ex rel. DPWN Holdings (USA), Inc. v. Indus. Comm.*, 2017-Ohio-8148.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. <br> DPWN Holdings (USA), Inc., | : | |
| | : | |
| Relator, | : | |
| | : | |
| v. | | No. 16AP-370 |
| | : | |
| Industrial Commission of Ohio <br> and | : | (REGULAR CALENDAR) |
| Bruce M. Parcell, | | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on October 10, 2017

**On brief:** *Reminger Co., LPA, Arthur W. Brumett II,* and *Martin T. Galvin,* for relator. **Argued:** *Arthur W. Brumett II.*

**On brief:** *Michael DeWine*, Attorney General, and *Lisa R. Miller*, and *Natalie J. Tackett*, for respondent Industrial Commission of Ohio. **Argued:** *Natalie J. Tackett.*

**On brief:** *Gallon, Takacs, Boissoneault & Schaffer Co., LPA,* and *Theodore A. Bowman,* for respondent Bruce M. Parcell. **Argued:** *Theodore A. Bowman.*

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, DPWN Holdings (USA), Inc. ("DPWN"), initiated this original action requesting a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate the January 27, 2016 order of its staff hearing officer

("SHO") setting the average weekly wage ("AWW") of respondent, Bruce M. Parcell, at $771.18 and instead enter an order setting Parcell's AWW at $556.69.

{¶ 2} This court referred the matter to a magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate rendered a decision that includes findings of fact and conclusions of law. The magistrate's decision, which is appended hereto, recommends this court grant relator's request for a writ of mandamus ordering the commission to vacate its January 27, 2016 order and to enter an amended order that sets the AWW at $563.55. Both the commission and Parcell filed objections to the magistrate's decision. The matter is now before the court for our independent review. For the reasons that follow, we sustain the commission's and Parcell's objections, and we therefore deny the requested writ of mandamus.

{¶ 3} Because both the commission and Parcell have filed objections to the magistrate's decision, we must independently review the decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). The commission and Parcell do not challenge the magistrate's recitation of the pertinent facts; however, both the commission and Parcell object to the magistrate's conclusion that the commission abused its discretion in finding "special circumstances" under R.C. 4123.61 when it determined Parcell's AWW to be $771.18.

{¶ 4} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, the relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). However, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987).

{¶ 5} R.C. 4123.61 provides a standard formula for calculating an injured worker's AWW, and "[o]rdinarily, AWW is determined by dividing a claimant's earnings for the year preceding the injury by 52 weeks." *State ex rel. Howard v. Indus. Comm.*, 10th Dist.

No. 08AP-129, 2008-Ohio-5616, ¶ 6.  Additionally, R.C. 4123.61 states that "[i]n cases where there are special circumstances under which the [AWW] cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the [AWW] in such cases, shall use such method as will enable the administrator to do substantial justice to the claimants."  Here, the magistrate determined that the commission abused its discretion in determining Parcell's AWW to be $771.18, concluding the SHO's January 27, 2016 order does not "set forth a factual and legal basis for finding special circumstances."  (Mag. Decision at ¶ 33.)

{¶ 6}  The magistrate relies almost entirely on this court's decision in *Howard* to conclude the commission abused its discretion in finding special circumstances.  We agree with the magistrate that *Howard* is instructive; however, we disagree with the magistrate's application of *Howard* to the pertinent facts in the record.

{¶ 7}  *Howard* notes that R.C. 4123.61 does not define either "special circumstances" or "substantial justice," and this court then explores various factors the commission may consider in finding "special circumstances."  *Howard* at ¶ 7-11. Among those factors are (1) whether a claimant voluntarily limited his or her hours; (2) "the underlying factual circumstances surrounding the term of unemployment;" and (3) the proximity of the claimant's injury to the date the claimant obtained full-time employment.  Though these are among the factors to be considered, *Howard* is clear that each case involving an allegation of special circumstances is unique and will depend heavily on the particular facts of that case.  *Howard* at ¶ 12.

{¶ 8}  In concluding the commission abused its discretion in finding special circumstances, the magistrate finds "[b]y inference" that Parcell was satisfied with part-time work while he worked for James Pharmacy, Inc. ("James Pharmacy") and that Parcell's decision to resign from James Pharmacy "was clearly a lifestyle choice."  (Mag. Decision at ¶ 34.)  The magistrate further states that Parcell "can not credibly claim that the period of unemployment following his resignation from employment at James Pharmacy was not a consequence of his earlier part-time lifestyle choice."  (Mag. Decision at ¶ 34.) In his review, the magistrate appears to engage in his own evaluation of the witness' credibility.  However, "questions of credibility and the weight to be given evidence are clearly within the discretion of the commission to resolve as fact finder."

*State ex rel. Ritzie v. Reece-Campbell, Inc.*, 10th Dist. No. 13AP-669, 2014-Ohio-2782, ¶ 6, citing *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165, 169 (1981).

{¶ 9}   Moreover, even if Parcell's decisions to work part-time for James Pharmacy and eventually to resign can fairly be characterized as lifestyle choices, we nonetheless find the commission did not abuse its discretion in finding special circumstances existed in Parcell's case.  As the Supreme Court of Ohio has held, "the purpose of the [AWW] * * * is 'to "find a fair basis for award for the loss of future compensation." ' "  *State ex rel. Ohio State Univ. Hosp. v. Indus. Comm.*, 118 Ohio St.3d 170, 2008-Ohio-1969, ¶ 6, quoting *State ex rel. Wireman v. Indus. Comm.*, 49 Ohio St.3d 286, 287 (1990), quoting *Riley v. Indus. Comm.*, 9 Ohio App.3d 71, 73 (10th Dist.1983).  Additionally, the application of "special circumstances" is appropriate when the AWW set using the standard calculation "is not a just barometer of the weekly earnings that [the claimant] has lost because of [his or her] industrial injury."  *State ex rel. Ohio State Univ. Hosp.* at ¶ 17.  Though the magistrate states "it takes time to find a new full-time job," the SHO expressly noted that Parcell had been unemployed since June 2010 and had only been successful in finding any employment, with James Pharmacy, in February 2014.  The SHO considered both the reasons Parcell chose the employment with James Pharmacy to begin with and the reasons why Parcell chose to terminate that employment.

{¶ 10} The record demonstrates that in the year preceding Parcell's injury, Parcell worked for James Pharmacy for 9 weeks when he voluntarily resigned his position, was unemployed for 14 weeks, and worked full-time for DPWN for 29 weeks.  In determining whether the standard calculation of AWW was substantially just, the SHO considered Parcell's work history both prior to and during the year immediately preceding his injury, and the record showed a substantial disparity between Parcell's earnings while working for DPWN and his earnings while working for James Pharmacy.  In an effort to provide an AWW that more closely reflected the weekly earnings that Parcell had lost because of his industrial injury, the SHO eliminated the 14-week period of unemployment and instead calculated Parcell's AWW from his combined 38 weeks of employment with both James Pharmacy and DPWN.  The resulting number, $771.18, was still significantly less than the average amount he earned per week when he actually worked for DPWN, which was $947.28.  Considering both the purposes of the AWW and the case law discussing the

application of "special circumstances," we conclude the SHO had some evidence to support his decision in both the application of special circumstances and the calculation of AWW at $771.18. Therefore, we do not adopt the magistrate's analysis regarding the application of special circumstances. For these reasons, we sustain both Parcell's and the commission's objections to the magistrate's decision.

{¶ 11} Following our independent review of the record pursuant to Civ.R. 53, we find the magistrate erroneously determined that DPWN is entitled to the requested writ of mandamus. The magistrate properly set forth the pertinent facts and identified the pertinent law, but the magistrate erroneously applied the law to the salient facts. Accordingly, we adopt the factual findings of the magistrate, reject the conclusions of law devolving therefrom, and deny the requested writ.

*Objections sustained; writ denied.*

TYACK, P.J., and BRUNNER, J., concur.

---

APPENDIX

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

The State ex rel.                                    :
DPWN Holdings (USA), Inc.,

                                                     :
              Relator,
                                                     :
v.                                                                    No.  16AP-370
                                                     :
Industrial Commission of Ohio                                        (REGULAR CALENDAR)
and                                                  :
Bruce M. Parcell,
                                                     :
              Respondents.
                                                     :

---

M A G I S T R A T E ' S   D E C I S I O N

Rendered on May 24, 2017

---

*Reminger Co., LPA, Arthur W. Brumett II,* and *Martin T. Galvin,* for relator.

*Michael DeWine,* Attorney General, and *Lisa R. Miller,* for respondent Industrial Commission of Ohio.

*Gallon, Takacs, Boissoneault & Schaffer Co., LPA,* and *Theodore A. Bowman,* for respondent Bruce M. Parcell.

---

IN MANDAMUS

{¶ 12} In this original action, relator, DPWN Holdings (USA), Inc. ("relator" or "DPWN") requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the January 27, 2016 order of its staff hearing officer ("SHO") that sets the average weekly wage ("AWW") at $771.18 based on the earnings of respondent, Bruce M. Parcell, during the year prior to the date of injury divided by 38

weeks, and to enter an order that sets AWW at $556.69 based on earnings during the year prior to the date of injury divided by 52 weeks.

<u>Findings of Fact</u>:

{¶ 13} 1. On March 9, 2015, Bruce Parcell ("claimant") sustained an industrial injury while employed as a full-time tractor-trailer driver for relator, a self-insured employer under Ohio's workers' compensation laws. The industrial claim (No. 15-812079) is allowed for "sprain, right ankle; right chronic achilles rupture."

{¶ 14} 2. Earlier, in February 2014, claimant began part-time employment as a delivery driver for James Pharmacy, Inc. He had been unemployed since June of 2010. He was employed at an hourly rate and used his personal vehicle to deliver prescription medications to James Pharmacy customers. He was also reimbursed for miles driven.

{¶ 15} 3. Claimant continued to work for James Pharmacy through May 10, 2014 when he voluntarily resigned his position as a delivery driver.

{¶ 16} 4. Claimant remained unemployed for an approximate 14-week period until he began employment with DPWN on August 18, 2014 as a full-time tractor-trailer driver. Claimant continued to work for DPWN until his industrial injury of March 9, 2015. Claimant was employed with DPWN for a 29-week period up to his date of injury.

{¶ 17} 5. As a self-insured employer, DPWN calculated AWW at $556.69. DPWN's calculation sheets of record show that claimant was employed at DPWN for 29 weeks and at James Pharmacy for 9 weeks during the year prior to the date of injury. Thus, claimant was employed a total of 38 weeks during the year prior to the date of injury. He was unemployed for 14 weeks.

{¶ 18} 6. DPWN's calculation sheets show that claimant earned a total of $28,947.85 during the year prior to the date of injury. That figure includes earnings at both James Pharmacy and DPWN. DPWN divided total earnings by 52 weeks to obtain AWW at $556.69 ($28,947.85 ÷ 52= $556.69).

{¶ 19} 7. DPWN's calculation sheets also show that the highest weekly amount claimant earned at DPWN was $1,145.90 on February 22, 2015. The lowest weekly amount claimant earned at DPWN was $710.65 on September 7, 2014.

{¶ 20} 8. On October 9, 2015, claimant moved that his AWW be reset at $771.18. In support, claimant submitted a calculation sheet produced by the law firm representing claimant, i.e., Gallon, Takacs, Boissoneault & Schaffer Co., LPA ("Gallon"). The Gallon calculation sheet shows that claimant earned a total of $29,304.70 during the year prior to the date of injury while employed with DPWN and James Pharmacy. That figure is divided by 52 weeks for an AWW calculation of $563.55.

{¶ 21} 9. Claimant also submitted a C-94-A Wage Statement from James Pharmacy showing that, during the nine-week period, claimant earned a total of $1,832.60 at James Pharmacy.

{¶ 22} 10. In further support of his October 9, 2015 motion, claimant submitted a single-page document captioned "Affidavit." However, the document of record fails to show that the document was executed by claimant and notarized. The document states:

> I, Bruce Parcell, do state the following is true and accurate to the best of my knowledge.
>
> I sustained an industrial injury on March 9, 2015. This affidavit is to outline my employment during the year prior to my industrial injury.
>
> From March 9, 2014 through May 11, 2014 I was employed as a part-time delivery driver for James Pharmacy. Unfortunately, the pay was not sufficient enough to make the job worthwhile, especially given the wear and tear that was put on my own vehicle. From May 12, 2014 through August 17, 2014 I was out of the work force actively seeking employment. I was successful in finding employment with the instant employer where I began working August 18, 2014 and continued up until the time I was injured.
>
> At this time, I respectfully request that my average weekly wage be recalculated and that the 14 weeks where I had no earnings be excluded from the calculation. I request that my total earnings of $29,304.70 be averaged over the 38 weeks I worked and that my average weekly wage be reset at $771.18. I believe this figure best reflects my earning capacity at the time of the industrial injury.
>
> Further, affiant sayeth naught.

{¶ 23} 11. Following a December 14, 2015 hearing, a district hearing officer ("DHO") issued an order denying claimant's motion to reset his AWW.  The DHO's order explains:

> The Hearing Officer orders the average weekly wage to remain as set by the Self-Insuring Employer at $556.69.
>
> The Injured Worker testified, and his affidavit reflects, that he was looking for work while working his part-time job. However, on 05/11/2014 he voluntarily resigned from that part-time position, prior to obtaining another position. The Injured Worker testified, and it is reflected in his affidavit, that he felt the part-time pay was not sufficient to make the job worthwhile, especially given the wear and tear it put on his vehicle. Therefore, there is no dispute the Injured Worker's lac[k] of work beginning 05/11/2014, until he was hired 08/18/2014, by another company, was the Injured Worker's choice and not beyond his control.
>
> Therefore, Hearing Officer finds that the above wage rate [] is reasonable and affords substantial justice to the Injured Worker.
>
> The Hearing Officer notes that the Injured Worker's period of unemployment was not beyond his control. Therefore it would be inappropriate to exclude those weeks from the wage calculation. The Hearing Officer does not find sufficient circumstances to warrant a special circumstances recalculation of the rate.
>
> The Hearing Officer finds the average weekly wage remains as set at $556.69.
>
> The Self-Insuring Employer is hereby ordered to comply with the above findings.

{¶ 24} 12.  Claimant administratively appealed the DHO's order of December 14, 2015.

{¶ 25} 13.  Following a January 27, 2016 hearing, an SHO issued an order that vacates the DHO's order of December 14, 2015, grants claimant's motion, and resets AWW at $771.18.  The SHO's order of January 27, 2016 explains:

> The Injured Worker's C-86 Motion, filed 10/09/2015, requests that the Injured Worker's Average Weekly Wage be

reset at the figure of $771.18, which is an increase from the setting of the Average Weekly Wage made by the Self-Insuring Employer at $556.69.

\* \* \*

Ohio Revised Code Section [4]123.61 provides the basis for calculating the Average Weekly Wage. That section provides, in pertinent part, that "The claimant's ... Average Weekly Wage for the year preceding the injury or the date of the disability due to the occupational disease begins is the weekly wage upon which compensation shall be based. In ascertaining the Average Weekly Wage for the year previous to the injury, or the date the disability due to the occupational disease begins, any period of unemployment due to sickness, industrial depression, strike, lockout, *or other cause beyond the employee's control* shall be eliminated.

The Injured Worker is requesting that the period of weeks from 05/12/2014 through 08/17/2014 be eliminated when calculating the Average Weekly Wage.

The Injured Worker's testimony at hearing, on Wednesday 01/27/2016, indicates that he had been unemployed since June of 2010, and had just obtained part-time employment as a delivery driver for James Pharmacy, Incorporated, on Lagrange Street in Toledo, Ohio, in February of 2014. He continued working that job through 05/10/2014. He was paid an hourly wage plus a per miles driven rate for the use of his personal vehicle when he delivered the prescriptions. His average weekly earnings, while working for James Pharmacy during the period from 03/09/2014 through 05/10/2014, was $183.26 per week. He testified that he did not believe that the amount of weekly earnings from James Pharmacy made the job "worthwhile." One of his reasons was because of the wear-and-tear that he had to put on his own personal vehicle. Furthermore, he testified that the area served by James Pharmacy was an inner-city area in a high crime area, which was yet another reason he did not want to continue that part-time employment. Therefore, the Injured Worker terminated his employment with James Pharmacy as of 05/10/2014, and he then began a full-time search for other employment.

The Injured Worker then began employment with Deutshe Post World Net (DPWN) Holdings (USA), Incorporated, doing business as Exel, Incorporated, on 08/18/2014. He was hired as a full-time tractor-trailer driver, pulling a 48 foot trailer. His job involved unloading and delivering auto parts to seven dealers in the State of Michigan. That position was a full-time permanent position. He still remains an employee and hopes to return to that former position of employment.

It is the finding of this Staff Hearing Officer that the Injured Worker's period of unemployment, from 05/11/2014 through 08/17/2014, was <u>not</u> due to "sickness, industrial depression, strike, lock-out, or <u>other cause beyond the employee's control</u>" (emphasis added) and, therefore, shall <u>not</u> be eliminated pursuant to the above-cited exception in regard to the calculation of the Average Weekly Wage pursuant to Ohio Revised Code Section 4123.61

However, there is a *second exception*, under Ohio Revised Code Section 4123.61 which provides, in pertinent part, that "in cases where there are special circumstances under which the Average Weekly Wage cannot justly be determined by applying this section, the Commission... shall use such method as will enable it to do substantial justice to the claimants."

The Court of Appeals of Ohio previously addressed the issue of such an exception for an employee who had a *voluntary* period of employment, in the case of *State ex rel. Exel Logistics, Incorporated v. Industrial Commission*, 2004-Ohio-3594. In the *Exel Logistics* case, the Court of Appeals quoted the prior case of *Riley v. Industrial Commission* (1983), 9 Ohio App.3d, and specifically held that, "Even where the period of employment before the new job was voluntary, the worker may qualify for the 'special circumstances' exception, depending on the circumstances." The Court of Appeals then went on to further quote from the *Riley* case and stated that the evidence showed that, "There is no indication that relator did not intend to work regularly in the future; in fact, the evidence is all to the contrary."

Furthermore, the Ohio Supreme Court, in the case of *State ex rel. Ohio State University Hospital v. Industrial Commission,* 118 Ohio St.3d 170, held that the "special circumstances" provision of Ohio Revised Code Section

4123.61 applied to the facts in that case, because "the figure obtained by application of the standard formula did not fairly represent the wages the claimant lost due to her injury." The Ohio Supreme Court, in the *Ohio State University Hospital* case also referred to the *Riley* case and stated that the application of the standard formula for calculating the Average Weekly Wage was, "obviously an unjust barometer of relator's prospective future average wages that would be lost if he could not work."

Likewise, in the instant case, the standard calculation of the Average Weekly Wage results in a setting of the Average Weekly Wage at the figure of $563.55. The least amount that the Injured Worker earned with the Employer of Record was $710.65 for the week ending 09/07/2014, and he had earned as much as $1,145.90 during the week ending 02/22/2015. Thus, the Injured Worker averaged $947.28 for the 29 weeks that he worked for Deutshe Post World Net (DPWN) Holdings (USA), Incorporated prior to the recognized date of injury of 03/09/2015.

Thus, it is the finding of this Staff Hearing Officer that the current setting of the Average Weekly Wage at the figure of $563.55 is not substantially just, since that figure is $383.73 less than the Injured Worker's average earnings with the Employer of Record.

Thus, on the authority of the cases cited above, it is the finding of this Staff Hearing Officer that the Injured Worker has met his burden of demonstrating that special circumstances exist in the instant claim which render the usual calculation of the Average Weekly Wage as an unjust method of determining his Average Weekly Wage.

Therefore, it is the order of this Staff Hearing Officer that the Injured Worker's Average Weekly Wage is hereby set at the figure of $771.18, based upon the Injured Worker's earnings of $29,304.70 for the 52 weeks prior to his date of injury of 03/09/2015, and dividing by 38 weeks actually worked (eliminating 14 weeks of unemployment from the calculation), based upon the "special circumstances" provision of Ohio Revised Code Section 4123.61.

(Emphasis sic.)

{¶ 26} 14. On February 23, 2016, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of January 27, 2016.

{¶ 27} 15. On March 22, 2016, the three-member commission mailed an order that denies relator's motion for reconsideration.

{¶ 28} 16. On May 13, 2016, relator, DPWN Holdings (USA), Inc., filed this mandamus action.

Conclusions of Law:

{¶ 29} The issue is whether the commission abused its discretion in setting AWW at $771.18 by dividing claimant's earnings during the year prior to the date of injury by 38 weeks based on a finding of special circumstances.

{¶ 30} Finding that the commission abused its discretion in finding special circumstances that justifies elimination of 14 weeks of unemployment during the year prior to the date of injury, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.

{¶ 31} R.C. 4123.61 provides:

> The average weekly wage of an injured employee at the time of the injury * * * is the basis upon which to compute benefits.
>
> * * *
>
> [T]he claimant's * * * average weekly wage for the year preceding the injury * * * is the weekly wage upon which compensation shall be based. In ascertaining the average weekly wage for the year previous to the injury, * * * any period of unemployment due to sickness, industrial depression, strike, lockout, or other cause beyond the employee's control shall be eliminated.
>
> In cases where there are special circumstances under which the average weekly wage cannot justly be determined by applying this section, the administrator of workers' compensation, in determining the average weekly wage in such cases, shall use such method as will enable the administrator to do substantial justice to the claimants.

{¶ 32} In *State ex rel. Howard v. Indus. Comm.*, 10th Dist. No. 08AP-129, 2008-Ohio-5616, this court had occasion to analyze the pertinent case law that defines "special circumstances" and "substantial justice." *Howard* is instructive here, and it states:

> As "special circumstances" and "substantial justice" are not defined, we must turn to case law to compare relator's circumstances to those of others who have been granted or denied an adjustment to the standard AWW calculation based upon special circumstances or a lack thereof. The "special circumstances" exception found in R.C. 4123.61 has been used when the wages earned prior to the injury do not reflect the claimant's earnings at the time of the injury and has generally been confined to uncommon situations involving the claimant's age, education, and background. See *State ex rel. Wireman v. Indus. Comm.* (1990), 49 Ohio St.3d 286, 288, 551 N.E.2d 1265. Both relator and the commission, here, rely largely on the same three cases to support their opposing positions, although each interprets them differently. In *State ex rel. Ohio State Univ. Hosp. v. Indus. Comm.*, 118 Ohio St.3d 170, 2008 Ohio 1969, 887 N.E.2d 325, the injured worker had graduated in June 2003 from a radiology technology program and began working full time at the Ohio State University Hospital ("OSU"), but was injured soon after commencing work in September 2003. The year prior to her injury, she had had taken a part-time job at a low wage while she recovered from an injury, and then she abandoned the work force to re-enroll in school. The commission granted her an adjusted AWW based upon special circumstances. Citing two cases, *Riley*, *supra*, and *State ex rel. Clark v. Indus. Comm.* (1994), 69 Ohio St.3d 563, 1994 Ohio 396, 634 N.E.2d 1014, the Ohio Supreme Court found that special circumstances warranted a departure from the standard calculation because it was the injured worker's first time in the full-time work force, and the work force entrance followed a period of specialized education and training in a field with enhanced income and career potential. *Ohio State Univ. Hosp.*, at ¶ 17. Under these circumstances, found the court in *Ohio State Univ. Hosp.*, the AWW using the standard calculation was not a just barometer of the weekly earnings that the injured worker lost because of her industrial injury. *Id.*
>
> In *Riley*, an employee began a full-time job after a period during which he chose not to work because he had other income. After returning to the labor market, he was injured

after three weeks at the new job. The evidence indicated, however, that the injured worker would have continued to be employed in his job and would have continued to earn his same salary. This court found no indication that the worker did not intend to work regularly in the future. Thus, this court found special circumstances existed to depart from the standard calculation under R.C. 4123.61.

In *Clark*, the Ohio Supreme Court found that, even though the claimant's reduced hours were voluntarily undertaken, "special circumstances" existed. The court explained that, even when a claimant has voluntarily limited her hours, the commission must inquire further to determine if "special circumstances" exist. In *Clark*, the claimant had left full-time work to care for her granddaughter who suffered severe psychiatric problems. When her granddaughter's situation changed, the claimant re-entered the work force and worked at a restaurant a few hours per week to see how her granddaughter would adjust to her absence. She was injured during her first month of employment. After her injury, she obtained full-time employment, where she earned substantially more per week than at the restaurant. The court found that "special circumstances" existed and that substantial justice would not be done, in that case, if the standard formula was applied.

Relator contends that the special circumstance found in *Riley* was not that the claimant had other income that allowed him not to work in the year prior to the injury, as the commission contends but, rather, that the claimant first became employed only three weeks before the injury. Likewise, with regard to *Clark*, relator contends that the special circumstance was the proximity of the claimant's date of injury to her re-entry into the work force, rather than the fact that the claimant had been forced from the work force for the year prior to the injury in order to get custody of her abused granddaughter, as the commission asserts. Similarly, with regard to *Ohio State Univ. Hosp.*, relator contends that the special situation was an injury that quickly followed an entry into the work force, and not the fact that the claimant entered into full-time work after a period of specialized education and training in a field that enhanced her income potential, as the commission asserts. Thus, relator insists that the special circumstance in all of the above cases is the same as hers, i.e., an injury quickly following a re-entry into

the work force after an extended absence, and the commission did not need to look any further than this fact.

Initially, we agree with relator that both *Riley* and *Clark* suggest that the special circumstance in those cases was an injury quickly following a re-entry into the work force after an extended absence. Although both cases involved factual backgrounds that provided unique circumstances, and although the Ohio Supreme Court and this court both endeavored to point out and discuss those backgrounds, the actual conclusions in those cases mention only the close proximity of the injury to the commencement of the job. For example, in *Clark*, the court stated, "[i]n *Riley*, *supra*, the proximity of the claimant's date of injury to his reentry into the work force constituted a 'special circumstance.' We find the same to exist in this case." *Clark*, at 565. In *Riley*, this court stated, "[t]he fact that relator first became employed only three weeks before the injury clearly constitutes a special circumstance since the average weekly wage is established to find a fair basis for award for the loss of future compensation." *Riley*, at 73.

However, we are unable to decisively conclude herein that the close proximity of the injury to the start of employment was the sole reason for finding special circumstances in these cases. As mentioned above, in *Riley* and *Clark*, this court and the Ohio Supreme Court specifically endeavored to detail the reasons underlying the absence from the work force for the prior year. Particularly, with regard to our decision in *Riley*, we pointed out, "[t]he unusual circumstances shown by relator were that, because of other income, he had no need to work and did not work for forty-nine of the fifty-two previous weeks. There is no indication that relator did not intend to work regularly in the future; in fact, the evidence is all to the contrary." *Riley*, at 72. Thus, it is arguable that the underlying factual circumstances surrounding the term of unemployment also played into our final conclusion in *Riley* that special circumstances existed.

In *Ohio State Univ. Hosp.*, it is even more apparent that the Ohio Supreme Court based its finding of special circumstances not only upon the unusually short period of employment prior to the injury, but, also, upon the reasons underlying the term of unemployment in the year prior to the injury. In that case, the staff hearing officer ("SHO") concluded:

Claimant testified that she was recruited by OSU in June 2000 for a job upon graduation from Wheeling Hospital's radiological technician program for a full-time position paying $ 16.45 per hour. Claimant further testified that due to an injury she had to interrupt her schooling in 09/2001 and took whatever work was available in the vicinity-and could only work part-time until she resumed her education, graduated, and moved to OSU to the job for which she had been recruited.

The Staff Hearing Officer finds such sequence of events to constitute special circumstances requiring an alternative means of setting the average weekly wage. * * *

(Emphasis added.) *Ohio State Univ. Hosp.*, at ¶ 9-10. The Ohio Supreme Court reiterated the unusual underlying circumstances in affirming the decision of the DHO:

We affirmed the *Riley* position in *Clark* and are guided by that reasoning in this case. This was not Burns's first foray into the workforce, but it certainly appears to be her first time in the full-time workforce. This workforce entrance, moreover, followed a period of specialized education and training in a field with enhanced income and career potential. Burns's efforts were rewarded when she was hired by OSU Hospital. Under these circumstances, the average weekly wage set by the bureau using the standard calculation is not a just barometer of the weekly earnings that Burns has lost because of her industrial injury.

(Emphasis added.) *Id.*, at ¶ 17. Thus, it is apparent from the preceding that, in addition to the short period between re-entry into the work force and the injury, the Ohio Supreme Court found special circumstances existed that made the usual calculation method for AWW substantially unjust because the claimant had just re-entered the work force after a period of specialized education and training to enhance her income and career potential.

Here, relator asserted that her unemployment from August 2005 to May 2006 should be excluded from the calculation of AWW because her absence from the work force during this period was due to her decision to stay at home to care for her children. We agree with the commission that this reason alone is not compelling enough to warrant "special circumstances." The Ohio Supreme Court has "decisively

> declared that workers' compensation benefits are not
> intended to subsidize lifestyle choices." *State ex rel. Baker
> Concrete Constr., Inc. v. Indus. Comm.*, 102 Ohio St.3d 149,
> 2004 Ohio 2114, at ¶ 18, 807 N.E.2d 347. For example, the
> Ohio Supreme Court has declined to award impaired earning
> capacity benefits to a claimant who left the labor market to
> stay home with her children. *Id.*, citing *State ex rel. Pauley v.
> Indus. Comm.* (1990), 53 Ohio St.3d 263, 559 N.E.2d 1333.
> In *Baker*, the court noted that the phrase "lifestyle choice" is
> also relevant in calculating AWW. *Id.* The court concluded in
> *Baker*, if unemployment springs from a lifestyle choice, then
> those weeks of unemployment are not beyond a claimant's
> control and omitting those weeks from the AWW contradicts
> both the statute and case law. *Id.* Therefore, *Baker* supports
> a finding that relator's unemployment due to her voluntary
> decision to stay home with her children was a lifestyle choice
> that should not provide her a windfall when calculating her
> AWW.

(Emphasis sic.) *Id.* at ¶ 7-14.

{¶ 33} Clearly, the SHO's order of January 27, 2016 fails to set forth a factual and legal basis for finding special circumstances. Therefore, the SHO's determination that AWW is $771.18 must be vacated.

{¶ 34} Analysis begins with the observation that claimant does not claim that he was searching for full-time work while employed part-time as a delivery driver for James Pharmacy. Rather, he only claims that he was searching for employment during the 14-week period of unemployment. That is, in his so-called affidavit, claimant avers "[f]rom May 12, 2014 through August 17, 2014 I was out of the work force actively seeking employment." By inference, claimant indicates that he was satisfied with part-time work although he was concerned about the wear and tear on his vehicle. Thus, claimant's part-time employment at James Pharmacy was clearly a lifestyle choice. Given the lifestyle choice while employed part-time, claimant can not credibly claim that the period of unemployment following his resignation from employment at James Pharmacy was not a consequence of his earlier part-time lifestyle choice. Simply put, it takes time to find a new full-time job.

{¶ 35} Given this analysis, it was clearly an abuse of discretion for the commission to find "special circumstances" under R.C. 4123.61.

{¶ 36} It can be further observed that the SHO relied on the Gallon calculation sheet showing that claimant earned a total of $29,304.70 during the year prior to the date of injury. Thus, it can be said that the SHO did not accept DPWN's calculation sheet showing that claimant earned $28,947.85 during the year prior to the date of injury. As earlier noted, DPWN determined that AWW is $556.69 by dividing total earnings for the year prior to the date of injury by 52 weeks.

{¶ 37} Given that the SHO accepted the Gallon calculation sheet showing that claimant earned a total of $29,304.70 during the year prior to the date of injury, the SHO should have entered a finding that AWW is set at $563.55.

{¶ 38} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate the finding of special circumstances in the SHO's order of January 27, 2016, and to enter an amended order that sets AWW at $563.55.

/S/ MAGISTRATE
KENNETH W. MACKE

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).